Maurice W. McLAURIN, Appellant,

v.

Shirley Ann McLAURIN, Appellee.

No. 06–97–00055–CV.

Court of Appeals of Texas,
Texarkana.

Argued April 14, 1998.

Decided May 21, 1998.

Deborah J. Race, Ireland, Carroll, Kelley, Tyler, for appellant.

Paul Hoover, Paul D. Hoover & Associates, Texarkana, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

OPINION

ROSS, Justice.

Maurice McLaurin appeals from an order interpreting an agreed Qualified Domestic Relations Order dividing military retirement benefits with his former wife, Shirley. The relevant facts in this case are as follows.

◆  Maurice joined the Air Force in 1954.

◆  Maurice married Shirley in 1957.

◆  Maurice and Shirley divorced in 1982. He agreed to pay her $450.00 per month in contractual alimony until she remarried. At that time, the United States Supreme Court had held that a spouse had no right to any portion of the other

spouse's military retirement benefits; Congress thereafter changed the law.

♦ Shirley remarried in 1988, and Maurice stopped making payments. Shirley had this marriage annulled and sued Maurice for reinstatement of alimony and for a division of military retirement benefits, which by then were clearly recognized as community property. *Buys v. Buys*, 924 S.W.2d 369, 371 (Tex.1996). The trial court granted the requested relief.

♦ That decision was appealed to this Court in 1991, but before addressing the case on its merits, upon request of the parties, we remanded the case to the trial court for entry of an agreed settlement. That agreement, duly signed by the parties, is the document at issue in the present appeal. In that document, the parties agreed that Shirley would be paid $385.00 per month by the Defense, Finance, and Accounting Service as her portion of Maurice's military retirement benefits. The agreement was signed by the trial court on November 10, 1992.

♦ Maurice subsequently went to work for the civil service at Red River Army Depot and took early retirement in February 1994 by purchasing his military retirement and using it to qualify for civil service retirement, thereby doubling his pension income.

♦ Since Maurice ceased receiving military retirement payments from the Defense, Finance, and Accounting Service, that agency made no further payments to Shirley after March 1994. She then sued Maurice seeking enforcement and/or clarification of the agreement.

♦ The trial court found that Shirley was due $13,090.00 plus interest and $1,000.00 attorney's fees, and ordered the office of personnel management to pay her the monthly amount set out by the agreement, deducting that amount from Maurice's civil service retirement.

The document at issue is an agreement that settled a previous lawsuit involving these parties. The 1988 lawsuit sought to divide Maurice's military retirement benefits which had not been divided in the divorce decree in 1982. The decision in the 1988 case was appealed and then settled by the parties with a document that was expressly drafted and entered as a Qualified Domestic Relations Order (QDRO).[1] On appeal, she defends the trial court's action based on former TEX. FAM.CODE ANN. § 3.71, *repealed by* Act of April 3, 1997, 75th Leg., R.S., ch. 7, § 3, 1997 Tex. Gen. Laws 8, 43, *recodified at* TEX. FAM.CODE ANN. § 9.007 (Vernon Pamph. 1998).

The first question is whether the Family Code applies to analysis of this agreement. The settlement agreement resulted from a partition action under the Family Code, but Maurice contends that, instead of seeking enforcement or clarification of that partition under the Family Code, Shirley should have brought a breach of contract action. He cites *Brannon v. Brannon*, 692 S.W.2d 528, 530 (Tex.App.-Dallas 1985, no writ), where the court held that a trial court was without authority under the Family Code to enforce any order entered in a common-law partition suit.

Similarly, this Court has also described a common-law partition action as a new, independent, and different cause of action from the divorce action. *Ex parte Maroney*, 741 S.W.2d 566, 567 (Tex.App.-Texarkana 1987, orig. proceeding) (finding no original jurisdiction because the partition did not result from the prior divorce action). Since *Brannon* and *Maroney* were decided, however, the Family Code has been amended to expressly authorize a suit seeking division of community property not divided or awarded in the decree. TEX. FAM.CODE ANN. § 3.90.[2]

---

1. At the time the agreement was entered and the document was created in 1992, the statute that now directly governs the creation of and amendment or clarification of QDRO documents was not in existence. That statute was former TEX. FAM.CODE ANN. § 3.711 (Act of May 27, 1995, 74th Leg., R.S., ch. 1026, § 1, 1995 Tex. Gen. Laws 5106, *recodified at* TEX. FAM CODE ANN. §§ 9.101–105 (Vernon Pamph.1998)).

2. *Repealed by* Act of April 3, 1997, 75th Leg., R.S., ch. 7, § 3, 1997 Tex. Gen. Laws 8, 43, *recodified at* TEX. FAM CODE ANN. § 9.203 (Vernon Pamph.1998). The only significant departure these new sections make from the common law is in applying the "just and right" division rule to property not divided or awarded by the final divorce decree. *In re Moore*, 890 S.W.2d 821,

In light of the language in the Family Code explicitly allowing division of property in a post-decree setting, it seems likely that *Brannon* and *Maroney* are no longer good law to the extent that they disapproved pursuit of a common-law partition under the Family Code. Thus, although this case could have been brought as a breach of contract action, it was a proper action under the auspices of the Family Code.

We therefore analyze this action under the provisions of the Family Code. Maurice contends that the court acted outside its statutory authority by altering the terms of the agreement in a manner that is beyond the power provided by the Family Code.

As set out by Maurice, the question is whether the trial court can clarify the order as it did. He contends that this Court should apply the reasoning set out in *Pierce v. Pierce*, 850 S.W.2d 675, 679 (Tex.App.-El Paso 1993, writ denied), and conclude that this order was not appropriate because the prior order it purports to clarify is not so unspecific or ambiguous that it could not be enforced by contempt. He argues that since contempt is not an available remedy, then language in the Family Code permitting clarification likewise cannot be used to empower the trial court to clarify the "judgment" in the present case.

This Court reviewed the concept of clarification in a family law context in *Traylor v. Traylor*, 789 S.W.2d 701, 703 (Tex.App.-Texarkana 1990, no writ). We held that where contempt was not available, clarifying orders

could not be entered under Section 3.72,[3] because that section specifically allowed clarifying orders to be entered only in the context of property divisions that were enforceable through contempt. In that case, however, the payments at issue were not in any way referable to community property. In reaching that decision, we applied the rule that "[a]n order to make future payments, other than for child support, which is not referable to community property is not enforceable by contempt." *Id.* (citing *Ex parte Duncan*, 462 S.W.2d 336 (Tex.Civ. App.—Houston [1st Dist.] 1970, no writ)). This rule is not applicable in the present case, because the payments are made as a result of Shirley's ownership of community property, and the order for such payments may ·be clarified pursuant to the Family Code.

Although a court is without authority to change provisions in a final judgment relating to property adjudication,[4] it does have authority to make orders necessary to carry the judgment into full effect. The subsequent order must be consistent with the provisions and finality of the judgment. *McGehee v. Epley*, 661 S.W.2d 924, 925–26 (Tex. 1983); *Cf. Schwartz v. Jefferson*, 520 S.W.2d 881, 888 (Tex.1975).[5]

This order did not impose an obligation to pay where no such obligation previously existed. *See McGehee*, 661 S.W.2d at 925–26 (holding that entry of a new obligation to pay constituted, as a matter of law, more than a clarification of a judgment); *see also Pearcy*

---

840 (Tex.App.—Amarillo 1994, no writ); *see Edlund v. Bounds*, 842 S.W.2d 719, 730 (Tex.App.— Dallas 1992, writ denied). If the language of the decree does not encompass all of the community property, the ex-husband and ex-wife still hold the undivided property as joint owners, and an original suit for partition of the property is now brought under Section 3.90. *Moore*, 890 S.W.2d at 840. The court is to consider the rights of each party and any children of the marriage in making its division. *See Haynes v. McIntosh*, 776 S.W.2d 784, 786 (Tex.App.-Corpus Christi 1989, writ denied).

3. Tex. Fam.Code Ann. § 3.72, *repealed by* Act of April 3, 1997, 75th Leg., R.S., ch. 7, § 3, 1997 Tex. Gen. Laws 8, 43, *recodified at* Tex. Fam.Code Ann. § 9.008 (Vernon Pamph.1998).

4. Although this clarification provision has no such explicit language, Tex. Fam.Code Ann. § 157.423 (Vernon 1996) contains language explicitly prohibiting such a change through a clarification order in the context of the parent-child relationship. Similarly, an ambiguous order in a family law case may be clarified under Tex. Fam. Code Ann. § 157.421 (Vernon 1996) if an order is not specific enough to be enforced by contempt. Since contempt is not involved here, and since that section specifies that it applies to proceedings under Title 5, that statute does not apply to the present situation, which involves Title 1.

5. An extensive discussion of the peculiarities of agreements incident to divorce and enforcement or clarification is set out in *Dechon v. Dechon*, 909 S.W.2d 950, 955–61 (Tex.App.-El Paso 1995, no writ).

*v. Pearcy,* 884 S.W.2d 512 (Tex.App.-San Antonio 1994, no writ). In the present case, the order altered the agreed mode of payment. It did not change the liabilities of the parties, but instead altered (clarified) the means of payment to extinguish those liabilities. Thus, the order was consistent with the prior judgment and merely prescribed the method of execution.

Therefore, if this is a clarification, it is a permissible one, because it does not change Maurice's duties or liabilities under the agreement, but merely changes the source of the agreed payments.

■ Despite Maurice's characterization, however, this order is not a clarification. It is more accurately described as a part of the enforcement remedy set out by the same statute, because it is "an order to assist in the implementation of ... the prior order...." TEX. FAM.CODE ANN. § 9.007(a). As noted above, Maurice contends that his act in moving the retirement benefits from one plan to another eliminated his duty to pay because the agreement specified the source of the payment, and that source has no funds left to expend.

■ In reaching this conclusion, however, Maurice has disregarded the underlying fact that where such benefits are concerned, he is not the sole owner of those benefits-and that the agreement does not purport to change that relationship. Shirley owned as her part of the community estate a share in the right to retirement benefits obtained as a result of military service by Maurice during the marriage. *See Cearley v. Cearley,* 544 S.W.2d 661 (Tex.1976); *Busby v. Busby,* 457 S.W.2d 551, 554 (Tex.1970). Under Texas community property law, the spouse has an ownership right in the retirement proceeds and thus an account receivable based upon a division of the community property. *Goad v. Goad,* 768 S.W.2d 356, 358 n. 3 (Tex.App.-Texarkana 1989, writ denied).

The 1992 agreement does not in some way trade Shirley's ownership of the right to share in benefits for a particular payment schedule. Rather, the language contained within that agreed order sets out how the payments should be made to her from her share in the right to those benefits. Her right to the monthly payments travels with the funds, and she remains entitled to the payments agreed upon.

Because this order did not have the effect of "clarifying" a previous ambiguity or correcting a previous error, it is more accurately described as an order designed to implement the prior agreed order at the most fundamental level-to provide for the agreed payments from the (newly) appropriate pension fund into which a portion of Maurice's prior fund was deposited. By taking this action, the trial court ensured that the unilateral act of the husband, taken to his own benefit, would not dispossess the wife of community property from which she was entitled to reimbursement. The language of Section 9.007 provides the court with authority for the action taken, and error has not been shown.

The judgment is affirmed.