Marion Wayne HODSON, Appellant,

v.

Christina G. (Hodson) KEISER,
Appellee.

No. 08–00–00260–CV.

Court of Appeals of Texas,
El Paso.

May 9, 2002.

C.R. Kit Bramblett, Bramblett & Bramblett, P.C., John P. Mobbs, Attorney at Law, El Paso, for Appellant.

John L. Williams, El Paso, for Appellee.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

In this suit affecting the parent-child relationship, Marion Wayne Hodson contends the trial court improperly modified the agreed property division contained within the final decree of divorce in ruling on a motion to modify child support. He submits, in the alternative, that the trial court abused its discretion because there is legally insufficient evidence to support sums in excess of the statutory child support guidelines. We affirm.

### FACTUAL SUMMARY

Hodson and Christina (Hodson) Keiser were divorced on November 19, 1998. They are the parents of three children: Andraya, born October 24, 1988; Nichole, born May 12, 1990; and Christina, who was over the age of eighteen at the time of divorce. The parties were appointed joint managing conservators of the two younger girls, with Keiser having the right to establish their primary residence.

Hodson and Keiser entered into an agreement concerning the division of their community estate. Each party was awarded an undivided one-half interest in the marital home.[1] Keiser was assigned all the credit card debt—which exceeded $26,000—plus the mortgage on the home and the note on a motor home awarded to Hodson. Debt service on just the house and the motor home exceeded $1,000 per

1. The decree additionally provides that Keiser shall have "the exclusive right of possession of the property until all child support obligations under this decree of divorce have terminated." It makes no provision for the sale of the residence upon the children's attainment of majority.

month. Hodson agreed to pay $1,000 a month child support which he characterized as "not solely for the purpose of child support ... [but for] paying joint bills also."

There has been a great deal of litigation since the divorce. Keiser sought a protective order on January 29, 1999, alleging Hodson had engaged in numerous acts of family violence. The Department of Protective and Regulatory Services (DPRS) filed a motion to modify conservatorship on June 7, 1999, seeking to have Keiser named sole managing conservator and to deny Hodson access to and possession of the children. An investigator validated a claim relating to Hodson's emotional abuse of Nichole and Andraya. A month later, DPRS sought temporary conservatorship to protect the children from Hodson, claiming he had a history of family violence, had sexually abused his oldest daughter Christina, and had endangered Nichole and Andraya.

Findings of fact contained within the temporary orders recited a history of family violence and a history of physical and emotional abuse by Hodson. He made explicit death threats toward his wife and oldest daughter. The court appointed DPRS temporary managing conservator and the children were placed in foster care.[2] Hodson was denied visitation with his daughters and was restrained from threatening Keiser, his children, or El Paso Guidance Center personnel and from going within one hundred yards of the residence or place of employment of any of them. Both Hodson and Keiser were ordered to pay child support to DPRS, Hodson in the amount of $495 per month and Keiser in the amount of $195 per month.

Following a hearing on October 1, 1999, the court entered findings that the chil-

dren were attending therapy on a weekly basis. Hodson had been corresponding with his daughters, but because some of the letters were inappropriate, they were withheld by the guardian ad litem. It was noted in the permanency plan and progress report filed December 10, 1999 that Nichole had disclosed that she was sexually abused by her father and Andraya had reported a long history of physical abuse. Hodson subsequently pled guilty to indecency with a child by sexual contact, was placed on deferred adjudication probation, and was prohibited from having contact with his children. Neither child wanted, nor did their therapist feel they were ready for, contact with their father. By agreed order, the children were returned to Keiser on December 20, 1999. Individual and family counseling continued as recommended by their therapist.

Keiser and Hodson both filed motions to modify child support as the Department's involvement came to an end. As a result of the criminal charge against him, Hodson was involuntarily transferred to a different employment position and his gross pay decreased from $2,800 to $1,802 per month. Consequently, he sought a decrease in support because of the decline in his resources. Keiser wanted support returned to the $1,000 figure ordered pursuant to the divorce decree.

█ The trial court determined that Hodson's net resources were $1,473 per month, that the appropriate amount of support pursuant to the statutory guidelines was $368.26 per month, that the evidence rebutted the presumption that application of the guidelines would be in the best interest of the children, and that application of the guidelines would be unjust and inappropriate. Support was set at $699.40, representing guideline support

---

**2.** By this time, Keiser was under psychiatric care and involved in family therapy. The record reveals some concern that due to her own distress, she was not able to adequately protect the girls from their father.

plus additional child support of $331.14, an amount equal to one-half of the monthly mortgage payment.[3] Additionally, the court entered a medical support order requiring Hodson to reimburse Keiser the monthly premium for the children's insurance coverage. It then specified the following reasons for deviation from the guidelines: the age and needs of the children; the financial resources available for the support of the children, including the children's need for continuing therapy; the debts assumed by the parties; and the circumstances of the parties, including the fact that Hodson's behavior is the reason the children are in therapy. Keiser was designated sole managing conservator and DPRS was dismissed as a party to the suit.

Hodson was denied visitation with the children because it would not be in their best interest and would endanger their physical or emotional welfare. The terms and conditions of his adult community supervision were adopted as orders of the court and incorporated therein. This appeal follows.

Hodson does not challenge the support order to the extent it is in accordance with the guidelines nor does he complain of the medical support order. Thus, the issue for our review is limited to the trial court's award of an additional $331.14 in support.

## WAS THERE A MODIFICATION OF THE PROPERTY DIVISION?

■ In his first issue for review, Hodson contends the child support order is

---

3. The trial court expressed some obvious dismay concerning the division of property at divorce:

> THE COURT: But I will say this, that it strikes me as very odd, very inequitable for Mrs. Kaiser [sic] to continue paying the mortgage and at the time that the youngest child reaches maturity, Mr. Hodson retains his one-half undivided interest in that property. I don't know why that wasn't addressed at the divorce decree or at the final hearing, but I'm going to address it now.
>
> .      .      .      .      .
>
> Addressing the mortgage issue, testimony was that's at $666 a month. Since Mr. Hodson retains a one-half interest in that property, I'm ordering him to pay $333 of a mortgage to Mrs. Kaiser [sic]. That's as additional child support.
>
> .      .      .      .      .
>
> TRIAL COUNSEL: My question to you is, my question is, is that to be worded as additional child support?
> THE COURT: Whatever you want to word it. That's what I'm ordering.
> TRIAL COUNSEL: I want to find out how the Court wants it ordered.
> THE COURT: Make it additional child support ordered in equity.

We first note that appellate courts are "not entitled to look to any comments that the judge may have made" during a bench trial to determine the basis for the ruling. *In the Interest of W.E.R.*, 669 S.W.2d 716, 716 (Tex.

1984). Secondly, despite the trial court's obvious concern, it is not uncommon for spouses to retain a joint tenancy in the marital homestead until the children reach majority, and it is not particularly rare for the spouse having the benefit of possession to assume the mortgage obligation and provide routine maintenance. This compromise may be necessary when there are insufficient assets to permit offsetting property awards to the spouses. When the home is the primary asset, an outright award to one spouse may require cash or an equalizing judgment to compensate the other spouse for his or her interest. When financial circumstances prevent such a buyout, the only other option may be to sell the house. Where minor children are involved, it may preferable for both spouses to maintain an interest in the property so that the children may continue to live in the home. The house may then be ordered sold once they attain majority. While most divorce decrees contain provisions for the sale of the home and the disbursement of the proceeds, the Hodsons decree does not. And although the divorce decree does not address federal income tax liability, it is likely that Keiser has obtained the benefit of the allowable tax deduction for mortgage interest paid. In any event, Hodson—who has deferred distribution of the property—will ultimately be compensated for the delay by sharing in any increase in fair market value between the date divorce and the date of sale.

void because it violates the statutory prohibition against the modification of a property division. Under the Texas Family Code, a court may not amend, modify, alter, or change the division of property made or approved in the divorce decree. *See* TEX.FAM.CODE ANN. § 9.007(a) (Vernon 1998). Hodson characterizes the modification order as requiring him to pay one-half of the mortgage and directs our attention to *Valencia v. Valencia,* 792 S.W.2d 565 (Tex.App.—El Paso 1990, no writ) and *Griffith v. Griffith,* 698 S.W.2d 729 (Tex.App.—El Paso 1985, no writ). We find these cases clearly distinguishable. The modification order here does not impose an obligation where no such obligation previously existed. *See McGehee v. Epley,* 661 S.W.2d 924, 925–26 (Tex. 1983); *McLaurin v. McLaurin,* 968 S.W.2d 947, 949–50 (Tex.App.—Texarkana 1998, no pet.). Hodson has not been required to assume the mortgage indebtedness nor has he been required to pay a portion of the mortgage directly to the lender. There has been no alteration in the division of property as Hodson continues to retain a one-half interest in the home and Keiser continues to be responsible for servicing the debt. Although the trial court used the mortgage payment as a barometer for support above the guidelines, it did not change the respective liabilities or duties of the parties. *See McLaurin,* 968 S.W.2d at 950. We overrule Issue One.

## SUFFICIENCY OF THE EVIDENCE

In his second issue, Hodson challenges the legal sufficiency of the evidence to support an award in excess of the presumptive guidelines. He properly incorporates a contention that the order is arbitrary and unreasonable so as to constitute an abuse of discretion. In this case, as in most family law cases, these two standards of review overlap.

## Standards of Review

An order regarding child support will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). While the appellant may challenge the sufficiency of the evidence to support findings of fact, in most circumstances, that is not enough. We must engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court err in its application of discretion? *Lindsey v. Lindsey,* 965 S.W.2d 589, 592 (Tex.App.—El Paso 1998, no pet.). The traditional sufficiency inquiry applies to the first question. *Id.* Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision. In other words, we must conclude that the ruling was neither arbitrary nor unreasonable.

In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Lindsey,* 965 S.W.2d at 591; *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Neily v. Aaron,* 724 S.W.2d 908, 913 (Tex.App.—Fort Worth 1987, no writ). In a bench trial, findings of fact are the equivalent of a jury answer to the special issues. *Lindsey,* 965 S.W.2d at 591; *Associated Telephone Directory Publishers, Inc. v. Five D's Publishing Co.,* 849 S.W.2d 894, 897 (Tex.App.—Austin 1993, no writ).

The term "abuse of discretion" is not susceptible to rigid definition. *Lindsey*, 965 S.W.2d at 591; *Landon v. Jean-Paul Budinger, Inc.*, 724 S.W.2d 931, 934 (Tex.App.—Austin 1987, no writ). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), *citing Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.—1939, opinion adopted). Stated differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Company*, 665 S.W.2d 439, 443 (Tex. 1984); *Landry v. Travelers Insurance Co.*, 458 S.W.2d 649, 651 (Tex.1970). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965); *Jones v. Strayhorn*, 159 Tex. 421, 321 S.W.2d 290, 295 (1959).

### Requisites of Modification

To modify child support, the movant must show that there has been a material and substantial change in the circumstances of a child or a person affected by the prior order since the time the order was rendered. *See* TEX.FAM.CODE ANN. § 156.401 (Vernon 1996); *Lindsey*, 965 S.W.2d at 593. The best interest of the child is always the trial court's primary consideration in determining questions of child support. *Carson v. Hathaway*, 997 S.W.2d 760, 761 (Tex.App.—El Paso 1999, no pet.); *Lindsey*, 965 S.W.2d at 593.

Thus, the court retains broad discretion in making the equitable decision of whether to modify a prior support order.

### Evidence Elicited at Trial

As for a material and substantial change in circumstances here, there is evidence that since the date of divorce, Hodson's income has declined while the expenses of the children have increased. The DPRS caseworker testified that the sexual and physical abuse the children suffered needed to be addressed in therapy. The children each see a therapist once a week. They also attend separate family therapy sessions once every three weeks. Therapy expenses range from $85 to $125 per hour. Individual therapy, even calculated at the low end of $85 per child per week, will cost $680 per month. The family sessions will cost $1,464 annually, or approximately $122 per month. Using these figures, the total monthly cost of therapy will be more than $800 for many years to come.

Hodson argues there was no evidence that health insurance would not cover these costs. We disagree. The temporary orders entered by the court on October 4, 1999, required that Keiser "continue to carry medical insurance on the children." The modification order specifically found that the children were covered under Keiser's insurance plan and ordered her to continue coverage. That the children have been covered on the same policy during the pendency of this litigation is significant inasmuch as both Keiser and the caseworker testified that DPRS had been paying for the children's therapy and would continue to do so only until it was dismissed from the case. This is some evidence that the therapy is not covered by insurance. Because the evidence supports an award in excess of the guidelines, the modification order was neither arbitrary

nor unreasonable. We overrule Issue Two and affirm the judgment.