**In the Interest of E.A.S. and B.M.S., Minor Children.**

No. 08-02-00483-CV.

Court of Appeals of Texas, El Paso.

Oct. 30, 2003.

Allen R. Stroder, Hirsch & Stroder, L.L.P., Odessa, for Appellant.

William R. Bowden, Odessa, for Appellee.

Before Panel No. 1 LARSEN, ANN CRAWFORD McCLURE, and CHEW, JJ.

### OPINION

ANN CRAWFORD McCLURE, Justice.

This is an appeal from the modification of child support payments. The primary issue for review is whether Kevin Scott was intentionally underemployed. We affirm.

## FACTUAL SUMMARY

Although the record does not contain the final decree, Kevin and Rebecca Scott were divorced at some point between February 1996 and February 1999. In February 1999, the trial court modified Kevin's child support obligations, setting support at $750 per month for two children. In November 2000, the support was increased to $874 monthly. Kevin lost his job in April 2001. As part of his severance package, he was to be paid his salary through October. On October 1, Kevin filed suit to decrease support. Following a bench trial in March 2002, the trial court set support at $728 per month.

Kevin has a degree in computer science and had worked for Texas Instruments in Sherman, Texas for over seventeen years when he was laid off. He began his job search in May 2001 and tried to find work throughout Texas and in New York City, Oklahoma, California, and Colorado. He attended several training sessions with employment companies, including courses in interviewing skills and resume writing. He sent out between 1,500 and 2,000 applications which generated only two requests for interviews. One was from a headhunter firm and one was for a teaching position with the San Angelo Independent School District. The position in San Angelo was for a technician rather than a teacher, with a salary of $40,000 to $45,000. Kevin visited numerous companies around Dallas and left resumes and cover letters with the human resources departments.

Also in May 2001, Rebecca told Kevin that her father, Ruben Velasquez, would offer him a job. The job was temporary, required extensive travel on the east coast, did not permit time off, and would not allow Kevin to see his children during their summer vacation. Velasquez testified at trial that the job would pay between $20 to $45 per hour and that his low-end employ-ees earned about $45,000 a year. Kevin never contacted him about the job. Instead, he began working as a part-time teacher for the Sherman Independent School District, where his current wife is employed as an administrator. He is paid a little over $14,000 a year, or $1,171 per month, for twenty hours of work per week. Although he has applied for a full-time position, the district has had no positions available. At the time of the hearing, Kevin was still actively seeking full-time employment and a higher paying position. As part of his teaching certification requirements, Kevin was also taking courses at Texas A & M University in Commerce.

## STANDARD OF REVIEW

On appeal, Kevin complains that the trial court abused its discretion in setting child support based upon his intentional underemployment. Indirectly, he challenges the legal and factual sufficiency of the evidence to establish that he is intentionally underemployed. Because these points implicate two different appellate standards of review, we first address the distinctions between them and how they overlap in the family law arena.

A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact-finding. *In the Interest of De La Pena*, 999 S.W.2d 521, 532 (Tex.App.-El Paso 1999, no pet.). When reviewing a legal sufficiency complaint, we consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001). "Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. *Bates v. Tesar*, 81 S.W.3d 411, 425 (Tex.App.-El

Paso 2002, no pet). The test for factual insufficiency is set forth in *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In reviewing an issue asserting that a finding is against the great weight and preponderance of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. It is for the fact finder to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *See Carrasco v. Goatcher,* 623 S.W.2d 769, 772 (Tex. App.-El Paso 1981, no writ).

▮ Most orders arising from a suit affecting the parent/child relationship will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Hodson v. Keiser,* 81 S.W.3d 363, 367 (Tex.App.-El Paso 2002, no pet.). In the child support context, an appellant may challenge the sufficiency of the evidence to support a finding of net resources, a finding of the proven needs of the child, a finding of voluntary unemployment or underemployment, or a finding of a material and substantial change in circumstances. Our analysis employs a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court err in its application of discretion? *Hodson,* 81 S.W.3d at 367; *Lindsey v. Lindsey,* 965 S.W.2d 589, 592 (Tex.App.-El Paso 1998, no pet.). The traditional sufficiency inquiry applies to the first question. *Id.* Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision. In other words, we must conclude that the ruling was neither arbitrary nor unreasonable. *Hodson,* 81 S.W.3d at 367. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965); *Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (1959). An abuse of discretion does not occur as long as some evidence of a substantive and probative character supports the trial court's decision. *See In the Interest of Gonzalez,* 993 S.W.2d 147, 155 (Tex.App.-San Antonio 1999, no pet.); *D.R. v. J.A.R.,* 894 S.W.2d 91, 95 (Tex.App.-Fort Worth 1995, writ denied).

## ABSENCE OF FINDINGS OF FACT

▮ As we have noted, Kevin contests the trial court's "finding" that he is intentionally underemployed. However, this appeal proceeds without the benefit of either statutory or traditional findings of fact and conclusions of law. *See* TEX.FAM. CODE ANN. § 154.130 (Vernon 2002); TEX. R.CIV.P. 296, *et seq.* Instead, Kevin relies upon the following statements made by the trial judge on the record:

> So I guess what I am fixing to lay on the table and what my ruling is going to be is that I can find that he is underemployed as of today, March 5, 2002, whereas he has a job offer of $45,000, and use those figures for child support.

> . . .

▮ So I don't know what Mr. Scott is going to do, but I am going to enter that order that he is underemployed; that he has the ability to make $45,000 a year that's $3,750 dollars gross per month. That's a net of $2,912 according to the charts, 25 percent of that is 728 a month.

Oral statements by the judge on the record will not be accepted as findings of fact.

*In re W.E.R.,* 669 S.W.2d 716 (Tex.1984); *Tate v. Tate,* 55 S.W.3d 1, 7 n. 4 (Tex.App.-El Paso 2000, no pet); *Ikard v. Ikard,* 819 S.W.2d 644, 647 (Tex.App.-El Paso 1991, no writ). Nor may the statements be prepared as a reporter's record and filed as formal findings. *Tate,* 55 S.W.3d at 7 n. 4; *Nagy v. First National Gun Banque Corporation,* 684 S.W.2d 114, 115–16 (Tex. App.-Dallas 1984, writ ref'd n.r.e.). In the absence of findings, the judgment of the trial court must be affirmed if it can be upheld on any available legal theory that finds support in the evidence. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277 (Tex.1987), *In re W.E.R.,* 669 S.W.2d 716 (Tex.1984). If the appellate court determines the evidence supports a theory raised by the pleadings or tried by consent, then it is presumed that the trial court made the necessary findings and conclusions to support a recovery on that theory. *Lemons v. EMW Mfg. Co.,* 747 S.W.2d 372 (Tex.1988). These presumptions are tantamount to implied findings.

We recognize that this rule may appear hypertechnical given the trial courts's comments but it is not within our province to disregard it. We must now consider whether there is evidence in the record to support the trial court's ruling. Our review of the record indicates that intentional underemployment was the primary defensive theory asserted at trial, but it was not the only one.

## INTENTIONAL UNDEREMPLOYMENT

 Kevin contends that the trial court abused its discretion in concluding that he was intentionally unemployed because he chose not to accept a lucrative job offer from his former father-in-law. If the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor. TEX.FAM.CODE ANN. § 154.066. "A parent who is qualified to obtain gainful employment cannot evade his support obligation by voluntarily remaining unemployed or underemployed." *Tenery v. Tenery,* 955 S.W.2d 337, 340 (Tex.App.-San Antonio 1997, no pet.). In order to find a parent intentionally underemployed, the evidence must show that the parent reduced his income for the purpose of decreasing his child support payments. *In re P.J.H.,* 25 S.W.3d 402, 405–06 (Tex. App.-Fort Worth 2000, no pet.). The requisite intent may be inferred from such circumstances as the parent's education, economic adversities, business reversals, business background, and earning potential. *In re Davis,* 30 S.W.3d 609, 617 (Tex.App.-Texarkana 2000, no pet.); *In re P.J.H.,* 25 S.W.3d at 406. At the same time, the court must keep in mind a parent's right to pursue his or her own happiness. *Zorilla v. Wahid,* 83 S.W.3d 247, 253 (Tex.App.-Corpus Christi 2002, no pet.); *DuBois v. DuBois,* 956 S.W.2d 607, 610 (Tex.App.-Tyler 1997, no pet.). Once the obligor has offered proof of his current wages, the obligee bears the burden of demonstrating that the obligor is intentionally underemployed. *Zorilla,* 83 S.W.3d at 253; *DuBois,* 956 S.W.2d at 610. Intentional underemployment has been construed to mean a "voluntary choice by the obligor." *In re D.S.,* 76 S.W.3d 512, 520 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Baucom v. Crews,* 819 S.W.2d 628, 633 (Tex.App.-Waco 1991, no writ.)(affirming modification where trial court found that obligor voluntarily became underemployed). Where an obligor voluntarily becomes underemployed, the essential question is whether the reduction was effectuated with a design to reduce child support payments. *In re Davis,* 30 S.W.3d at 616; *DuBois,* 956 S.W.2d at 610. The

question here is somewhat different. Since Kevin's lay off was clearly involuntary, the issue is whether he voluntarily remained underemployed.

At the time of trial in March 2002, Kevin was teaching part-time and receiving monthly gross income of $1,171; after deducting the cost of his children's medical insurance, he received net pay of $950. He was receiving unemployment benefits of $500 per month which he anticipated would continue for at least one month and perhaps as long as six months. He admitted that he had not applied for any other part-time positions to supplement his income; that he was capable of working 40 hours per week; and that he was capable of earning at least $13.50 per hour. He offered no explanation of why he had not bothered to contact Rebecca's father. He expressed no concern over a temporary job assignment on the east coast. While the record indicates some hostility between Kevin and Rebecca, there was no testimony whatsoever concerning ill feelings or strained relations between Kevin and her father. Mr. Velasquez testified that he still considered Kevin his son-in-law because Kevin is the father of his grandchildren. He intended to keep family issues separate from business and he had no problem with Kevin personally. Velasquez expressed his opinion that Kevin was "in a bad situation right now and, you know, if we can help him we will do everything we can."

### ADDITIONAL MONIES RECEIVED

Rebecca presented a second reason why the trial court should deny Kevin's motion to modify. Kevin was paid in connection with his employment at T.I. until October 2001. He then began collecting unemployment benefits, which totaled $5,172 that year. His W–2 statement from T.I. for the year 2001 revealed income in excess of $82,000. Kevin explained that his gross monthly salary during that time period was $4,600 and that he was paid through October. The discrepancy between his salary of $46,000 [$4,600 X 10 months] and his reported income of $82,430 was attributable to a distribution of his profit sharing plan, reimbursement for educational re-training, accrued vacation leave, and, of course, taxes. Of the monies he received upon termination, he spent some on bills and purchased $5,000 of T.I. stock, leaving thousands of dollars for which he admittedly could not account. He still owned the stock at the time of trial and while he did not know exactly how many shares he owned, he estimated 100 shares valued between $20 and $30 per share. He was unaware of any dividends paid. He had accumulated $75,000 in his 401K plan. On cross-examination, Kevin admitted that between his T.I. salary, teaching salary, unemployment benefits, and severance package, he received in excess of $90,000 in income for 2001. This figure does not include his wife's salary of $16,500, which allowed her to purchase a new car that year. The family also spent $2,000 on a ski vacation during the children's spring break. Although the record does not reveal when the school break occurred, one might infer that the trip was taken before the April 25 lay off.

The Family Code establishes guidelines for child support which are presumed to be reasonable and in the children's best interests. TEX.FAM.CODE ANN. § 154.122. The guidelines are specifically designed to apply to situations in which the obligor's monthly net resources are $6,000 or less. TEX.FAM.CODE ANN. § 154.125. Here, the percentage of net resources to be allocated for the support of the two children is 25 percent. *Id.*

For purposes of our analysis, "net resources" includes all wage and salary in-

come, self-employment income, and all other income actually being received, including capital gains. *See* TEX.FAM.CODE ANN. § 154.062(b). The court may order support above or below the guideline amount if the evidence rebuts the presumption that application of the guidelines is in the best interest of the children and justifies a variance from the guidelines. TEX.FAM.CODE ANN. § 154.123(a). In determining whether application of the guidelines would be unjust or inappropriate under the circumstances, the court shall consider evidence of all relevant factors, including:

- the ages and needs of the children;
- the ability of the parents to contribute to the support of the children;
- any financial resources available for the support of the children;
- the amount of time of possession of and access to the children;
- the amount of the obligee's net resources, including earning potential;
- child care expenses necessary to enable either party to maintain gainful employment;
- whether either party has the actual physical custody of another child;
- the amount of alimony or spousal maintenance currently being paid or received by a party;
- expenses for a child for education beyond secondary school;
- whether the obligor or obligee has benefits furnished by an employer or another person;
- the amount of other deductions from wages, salary, or other compensation;
- provision for health care insurance and payment of uninsured medical expenses;
- special educational, health care, or other expenses of the parties or of the children;
- the cost of travel in order to exercise possession of and access to the children;
- positive or negative cash flow from any real and personal property and assets;
- debts or debt service assumed by either party; and
- any other reason consistent with the best interest of the children.

*See* TEX.FAM.CODE ANN. § 154.123(b).

As we have outlined, the Family Code mandates that in determining whether application of the guidelines would be unjust or inappropriate, the court *shall* consider "any financial resources available for the support of the child." TEX.FAM.CODE ANN. § 154.123(b)(3). We have found no case law which defines "financial resources" but a clear reading of the statute indicates it is not synonymous with "net resources." *See Lide v. Lide*, 116 S.W.3d 147, 159 (Tex. App.-El Paso, 2003, no pet.). Indeed, a different subsection specifically uses the phrase "net resources" when directing the court to consider the obligee's income. TEX.FAM.CODE ANN. § 154.123(b)(5). The trial court as the sole judge of the credibility and demeanor of the witnesses, may well have considered that Kevin had other undisclosed financial resources.

On the state of the record before us, we conclude the evidence was both legally and factually sufficient to justify the child support award. Accordingly, we find no abuse of discretion. We overrule the sole issue for review and affirm the judgment of the trial court below.