Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
CRISTOBALILIANA CHAVEZ,                       )                  No. 08-03-00261-CV
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  388th District Court
)
RODRIGO CHAVEZ and MARTA CHAVEZ, )                  of El Paso County, Texas
)
                                    Appellees.                        )                  (TC# 2002-CM1208)

O P I N I O N

            Cristobaliliana Chavez appeals from a judgment designating Rodrigo Chavez and Marta
Chavez as managing conservator of her two children. We reverse and remand.
FACTUAL SUMMARY
            Cristobaliliana Chavez (Liliana), a Mexican citizen, and Gilberto Chavez (Gilberto) were
married on April 2, 1999 when Liliana was fifteen and Gilberto was twenty-six years of age. They
had one child prior to their marriage and one child born during marriage. The couple separated on
April 1, 2001. Initially, Liliana maintained custody of the children, including the time she lived at
the Battered Women’s Shelter. Gilberto visited the children often but in August 2001, he attempted
to take the older child by force. He struck Liliana in the presence of the children and she obtained
a protective order which she eventually dropped. In October 2001, Gilberto complained to Child
Protective Services (CPS) that Liliana was neglecting the children. Edna Morales, an investigator
employed with CPS, made an unscheduled home visit but was unable to substantiate the allegation
of physical neglect. On December 17, 2001, Liliana’s sister took the children and delivered them
to Gilberto, who was living with his parents, Rodrigo and Marta Chavez (the grandparents). That
same day, Gilberto made a second complaint to CPS, alleging that Liliana was physically abusing
the children and leaving them in the care of other people while she was using drugs. Morales
investigated and verified Gilberto’s claim that the children had scratches on their faces but she did
not determine that Liliana had caused the injuries. Due to the allegations that Liliana was using
drugs, Morales created a “Safety Plan” for the children in which she required both parents to undergo
drug testing. Both of them tested positive for cocaine. A drug assessment revealed that Liliana was
a recreational user while Gilberto had a “chemical dependent disorder.” During the subsequent
months, the grandparents and Gilberto prevented Liliana from seeing the children until she obtained
the services of Texas Rural Legal Aid and filed a petition for divorce. In that petition, she sought
managing conservatorship of the children. 
            At the conclusion of the temporary hearing held on April 8 and 9, 2002, the trial court
determined that the children should temporarily remain in the home of the grandparents. Liliana and
Gilberto were named temporary possessory conservators and were limited to supervised visitation
three times weekly. The court ordered them to undergo drug testing three times monthly. The court
further ordered that Gilberto move out of his parents’ home and enjoined him from returning there
except for supervised visitation with the children as ordered by the court. All of Liliana’s drug tests
were negative while Gilberto tested positive six times between April and August 2002, despite
undergoing residential drug treatment. Additionally, Gilberto attempted to falsify test results on
three other occasions by submitting non-human urine. In response to this information, the court
amended the temporary orders to permit Liliana to have unsupervised visits with the children while
maintaining the requirement that Gilberto’s visits be supervised by a parenting instructor provided
by the Texas Department of Protective and Regulatory Services.  
            The trial court set the case for trial on September 10, 2002 but Gilberto filed a motion for
continuance in late August. The trial court granted the continuance on September 6 and re-set the
case for September 18. On September 9, the grandparents filed a petition in intervention seeking
conservatorship of the children. They alleged that Liliana and Gilberto had voluntarily relinquished
possession and control of the children for a period of one year or more, a portion of which was
within ninety days preceding the filing of the petition in intervention. Liliana filed a motion to strike
the petition in intervention, arguing that the grandparents did not have standing because they had
not had possession of the children for at least six months. In response, counsel for the grandparents
informed the court that the intervention had been filed to give the court “another choice” in the event
neither parent was given custody of the children. The trial judge ruled that she would allow the
intervention. 
            The case proceeded to trial on September 18, 2002 as scheduled. At the conclusion of the
hearing, the court granted Liliana’s petition for divorce


 but declined to immediately rule on the
conservatorship issue because the court believed neither parent had demonstrated the capacity to
parent the children.


 Consequently, the court postponed the conservatorship hearing for four months
and ordered that the children remain with the grandparents pending a final ruling. Interim orders
were entered to that effect. 
            On March 25, 2003, the trial court conducted a hearing on the conservatorship issue. Isabel
Robles, who is employed by El Paso Human Services, testified that she provided individual therapy
for Liliana and Gilberto for four months but her services concluded in December 2002. At that
point, it would have been in the best interest of the children that Liliana be appointed managing
conservator, but Robles could not make the same recommendation at the March hearing because she
had not been in contact with Liliana since December. Robles was of the opinion that it was not in
the best interest of the children for the grandparents to be named managing conservators. She based
her opinion, in part, on the grandparents permitting Gilberto to have unsupervised visits with the
children in direct contravention of the court’s order while denying Liliana her scheduled visits. 
            Angelica Terrazas, an El Paso Human Services employee, provided parenting instructions
to both Liliana and Gilberto from April 2002 through mid-November 2002. In her view, Liliana did
well with the instructions. She learned how to communicate and play with her children as well as
provide basic care and discipline. Terrazas closed services in mid-November because Liliana had
progressed sufficiently and did not need further services. She saw no evidence to indicate that
Liliana had placed the children in emotional danger and they were not afraid of her. The
grandparents had resisted efforts to cooperate with Liliana and had evidenced an overly negative
attitude towards her. They did not attempt to foster communication between the children and
Liliana. In Terrazas’s opinion, this had affected the children’s bonding and attachment with their
mother. Finally, Terrazas believed that if the children remained in the grandparents’ home, they
would have minimal contact with Liliana. 
            William Jones, a caseworker employed by the Texas Department of Protective and
Regulatory Services, was assigned to an open CPS case involving the Chavez family in February of
2002. The case was opened after both parents tested positive for cocaine. Even though Gilberto
repeatedly tested positive for cocaine and the trial court had ordered that he not have unsupervised
visitation, the grandparents permitted him to visit the children in the absence of a parenting
instructor. In Jones’s view, the grandparents despised Liliana. They made negative comments about
her and failed to foster her communication with the children. He believed the children would grow
to hate their mother. In Jones’s opinion, it was not in the best interest of the children to remain with
the grandparents. Jones believed the children should be returned to Liliana except that the trailer in
which she was residing was inappropriate for the children.


 He described it as a temporary
arrangement--“a last-minute decision”--when she was forced to leave a residential living center after
a former boyfriend showed up uninvited.


 Liliana had intended to enter the Transitional Living
House but based on her immigration status, she was ineligible. Jones closed the case on March 6,
2003 because all services had been completed and the children were not at immediate risk.             At the conclusion of the hearing, the trial court announced her intention to appoint the
grandparents as sole managing conservators, with Liliana and Gilberto appointed as possessory
conservators. Upon request, written findings of fact and conclusions of law were prepared and filed. 
The court did not specifically find that the appointment of Liliana would significantly impair the
children’s physical health or emotional development. Nor did she find that Liliana had voluntarily
relinquished the children to the grandparents for more than one year. The only two factual findings
relevant to the award of conservatorship to the grandparents are:
(1) [Liliana] is unable to provide a stable home environment for the children.
(2) The children have resided with the paternal grandparents during the pendency of
this case, have thrived, and have enjoyed a safe and stable environment. 

From these facts, the court concluded that appointment of the grandparents as sole managing
conservators was in the children’s best interest. Liliana raises five issues on appeal. Despite the
importance of the issues raised, neither Gilberto


 nor the grandparents have favored us with a brief.
STANDING
            In Issue One, Liliana contends that the grandparents did not have standing to intervene. 
Standing is implicit in the concept of subject matter jurisdiction. Texas Ass’n of Business v. Texas
Air Control Board, 852 S.W.2d 440, 443 (Tex. 1993); Doncer v. Dickerson, 81 S.W.3d 349, 353
(Tex.App.--El Paso 2002, no pet.). Standing presents a question of law which we review de novo. 
Id.; Brunson v. Woolsey, 63 S.W.3d 583, 587 (Tex.App.--Fort Worth 2001, no pet.h.).
            Section 102.003 provides for general standing to file a an original suit affecting the parent-child relationship (SAPCR). Tex.Fam.Code Ann. §102.003 (Vernon Supp. 2004).


 Subsection
(a)(9) accords standing to a person, other than a foster parent, who has had actual care, control, and
possession of the child for at least six months ending not more than ninety days preceding the date
of the filing of the petition. Section 102.004 gives grandparents standing to file an original suit
requesting managing conservatorship if the order is necessary because the child’s present
environment presents a serious question concerning the child’s physical health or welfare, or both
parents, the surviving parent, or the managing conservator or custodian either filed the petition or
consented to the suit. Generally, an intervenor must show standing to maintain a suit in his own
right in order to intervene. Segovia-Slape v. Paxson, 893 S.W.2d 694, 696 (Tex.App.--El Paso 1995,
orig. proceeding); McCord v. Watts, 777 S.W.2d 809, 812 (Tex.App.--Austin 1989, no writ). This
showing requires that the intervenor have some present justiciable interest in the subject matter of
the suit. Segovia-Slape, 893 S.W.2d at 696. However, Section 102.004(b) of the Family Code
specifically provides that grandparents who have substantial past contact with the child may be
granted leave to intervene in a SAPCR. Thus, a grandparent need not have standing sufficient to
institute a SAPCR in their own right in order to intervene in a pending SAPCR. See Segovia-Slape,
893 S.W.2d at 696. This relaxed standing rule promotes the overriding policy in all SAPCR suits,
that of protecting the best interest of the child. Id.
            It is undisputed that the grandparents had substantial past contact with the children. 
Therefore, the trial court did not abuse its discretion by permitting them to intervene in the divorce
proceeding in which managing conservatorship was an issue. Issue One is overruled.
SUFFICIENCY OF THE EVIDENCE
            In Issue Two, Liliana argues that the evidence is legally and factually insufficient to support
the award of sole managing conservatorship to the grandparents because they failed to rebut the
parental presumption. Alternatively, Liliana asserts that even if the trial court’s findings are
supported by sufficient evidence, they do not support a legal conclusion that her appointment as
managing conservator would significantly impair the children’s physical health or emotional
development. 
Standards of Review
            Most orders arising from a suit affecting the parent/child relationship will not be disturbed
on appeal unless the complaining party can demonstrate a clear abuse of discretion. Worford v.
Stamper, 801 S.W.2d 108, 109 (Tex. 1990); Lide v. Lide, 116 S.W.3d 147, 151 (Tex.App.--El Paso
2003, no pet.). An appellant may challenge the trial court’s findings of fact for legal and factual
sufficiency of the evidence. See Hodson v. Keiser, 81 S.W.3d 363, 367 (Tex.App.--El Paso 2002,
no pet.). We review those findings by the same standards that are applied in reviewing the
sufficiency of the evidence. See Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). A trial
court’s conclusions of law are also reviewable to determine whether the law was incorrectly applied
to the facts. See Heritage Resources, Inc. v. Hill, 104 S.W.3d 612, 619 (Tex.App.--El Paso 2003,
no pet.). Conclusions of law are reviewed de novo as legal questions. Hitzelberger v. Samedan Oil
Corporation, 948 S.W.2d 497, 503 (Tex.App.--Waco 1997, writ denied). Erroneous conclusions
of law are not binding on the appellate court and if the controlling findings of fact will support a
correct legal theory, are supported by the evidence and are sufficient to support the judgment, then
the adoption of erroneous legal conclusions will not mandate reversal. Heritage Resources, 104
S.W.3d at 621.
            While an appellant may challenge the sufficiency of the evidence to support findings of fact,
in most circumstances that is not enough. Hodson, 81 S.W.3d at 367. In a case involving these
overlapping standards of review, we engage in a two-pronged inquiry: (1) Did the trial court have
sufficient information upon which to exercise its discretion, and (2) did the trial court err in its
application of discretion? Hodson, 81 S.W.3d at 367; Lide, 116 S.W.3d at 151. The traditional
sufficiency inquiry applies to the first question. Hodson, 81 S.W.3d at 367; Lide, 116 S.W.3d at 151. 
Once we have determined whether sufficient evidence exists, we must then decide whether the trial
court made a reasonable decision. Hodson, 81 S.W.3d at 367; Lide, 116 S.W.3d at 151. In other
words, we must conclude that the ruling was neither arbitrary nor unreasonable. Hodson, 81 S.W.3d
at 367; Lide, 116 S.W.3d at 151. 
            A “no evidence” or legal insufficiency point is a question of law which challenges the legal
sufficiency of the evidence to support a particular fact-finding. Lide, 116 S.W.3d at 151; In the
Interest of De La Pena, 999 S.W.2d 521, 532 (Tex.App.--El Paso 1999, no pet.). When reviewing
the legal sufficiency of the evidence, we consider only the evidence and inferences tending to support
the trial court’s finding, disregarding all contrary evidence and inferences. Bradford v. Vento, 48
S.W.3d 749, 754 (Tex. 2001). If any probative evidence supports the factual finding, it must be
upheld. Hodson, 81 S.W.3d at 367. “Insufficient evidence” or factual insufficiency involves a
finding that is so against the great weight and preponderance of the evidence as to be manifestly
wrong. Lide, 116 S.W.3d at 151. In reviewing an issue asserting that a finding is factually
insufficient or against the great weight and preponderance of the evidence, we must consider all of
the evidence, both the evidence which tends to prove the existence of a vital fact, as well as evidence
which tends to disprove its existence. Lide, 116 S.W.3d at 151. It is for the fact finder to determine
the weight to be given to the testimony and to resolve any conflicts in the evidence. Id.
            The term “abuse of discretion” is not susceptible to rigid definition. Hodson, 81 S.W.3d at
368. The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the
facts present an appropriate case for the trial court’s action, but whether the court acted without
reference to any guiding rules and principles. Id. Stated differently, the appropriate inquiry is
whether the ruling was arbitrary or unreasonable. Id. The mere fact that a trial judge may decide
a matter within his discretionary authority in a different manner than an appellate judge in a similar
circumstance does not demonstrate that an abuse of discretion has occurred. Southwestern Bell
Telephone Co. v. Johnson, 389 S.W.2d 645, 648 (Tex. 1965). An abuse of discretion does not occur
as long as some evidence of a substantive and probative character exists to support the trial court’s
decision. Lide, 116 S.W.3d at 152. If, however, the trial court drew an incorrect conclusion of law
by misapplying the law to the facts and the controlling findings of fact do not support a correct legal
theory sufficient to support the judgment, an abuse of discretion would be shown.
The Parental Presumption
            Liliana contends that the grandparents failed to overcome the statutory presumption that a
parent must be appointed managing conservator. There is a strong presumption that the best interest
of a child is served if a natural parent is appointed as a managing conservator. In re De La Pena, 999
S.W.2d 521 (Tex.App.--El Paso 1999, no pet); In the Interest of A.D.H., 979 S.W.2d 445, 447
(Tex.App.--Beaumont 1998, no pet.); see also Brook v. Brook, 881 S.W.2d 297, 299 (Tex. 1994);
Tex.Fam.Code Ann. § 153.131(a)(Vernon 2002). Section 153.131(a) statutorily provides for the
appointment of the parent as sole managing conservator, or the parents as joint managing
conservators, unless the court finds the appointment would not be in the best interest of the child
because it would significantly impair the child’s physical health or emotional development. The
parental presumption is also rebuttable under Section 153.373 (1) if the parent has voluntarily
relinquished actual care, control, and possession of the child to a nonparent for a period of one year
or more, a portion of which was within ninety days preceding the date of intervention in or filing of
the suit; and (2) the appointment of the nonparent as managing conservator is in the best interest of
the child.
            For the court to award managing conservatorship to a non-parent under Section 153.131, the
non-parent must prove by a preponderance of credible evidence that appointing the parent as a
managing conservator would result in serious physical or emotional harm to the child. In the Interest
of M.W., 959 S.W.2d 661, 665 (Tex.App.--Tyler 1997, no writ); Brook, 881 S.W.2d at 298. There
must be evidence to support the logical inference that some specific, identifiable behavior or conduct
of the parent will probably cause that harm. M.W., 959 S.W.2d at 665. This link between the
parent’s conduct and harm to the child may not be based on evidence which merely raises a surmise
or speculation of possible harm. Id. When a non-parent and a parent are both seeking managing
conservatorship, “close calls” go to the parent. M.W., 959 S.W.2d at 666; Ray v. Burns, 832 S.W.2d
431, 434 (Tex.App.--Waco 1992, no writ).
            Developing case law has indicated certain acts or omissions which would demonstrate
significant impairment of the child, such as physical abuse, severe neglect, abandonment, drug or
alcohol abuse, or immoral behavior on the part of the parent. M.W., 959 S.W.2d at 666; Thomas v.
Thomas, 852 S.W.2d 31, 35-36 (Tex.App.--Waco 1993, no writ). While we are to determine the
present fitness of a parent, we recognize that an adult’s future conduct may be somewhat determined
by recent past conduct. M.W., 959 S.W.2d at 666. In and of itself, however, evidence of past
misconduct may not be sufficient to show present unfitness. Id. Further, it is wholly inadequate to
simply present evidence that a non-parent would be a better choice as custodian of the child.
Lewelling v. Lewelling, 796 S.W.2d 164, 167 (Tex. 1990). The non-parent must offer evidence of
specific acts or omissions of the parent that demonstrate an award of custody to the parent would
result in physical or emotional harm to the child. Id. at 167. 
            As we said in De La Pena, custody disputes by their very nature are inherently fact-intensive. 
De La Pena, 999 S.W.2d at 529. Concepts of psychological parenting, bonding, and the depth of
attachments to parent-figures must be viewed in the context of the evidence presented. Id. Appellate
courts routinely defer to the fact finder at trial concerning matters of credibility and demeanor, but
perhaps in no other type of litigation is it more critical. Id. In most instances, the fact finder will
not hear from the child the subject of the suit; the child’s behavior, experiences, fears, joys, and
significant attachments will be conveyed through pictures and through the words of other witnesses,
both lay and expert. Id. The individuals vying for conservatorship may be scrutinized by the fact
finder for such intangible signs as an animated smile when describing a child’s achievements, a
furrowed brow when explaining typical affectionate concern, or even tears when anticipating the
emotional impact the outcome of litigation will have on a child. Id. Specific acts or omissions of
a parent implicating a significant impairment to a child’s emotional development may be inferred
from direct evidence. Id. Because safety, security, and stability are critical to child development,
the danger of uprooting a child may in some instances rise to a level that significantly impairs the
child’s emotional development. Id. Once again, however, such a conclusion depends on the facts
of the case.
            As for rebutting the presumption pursuant to Section 153.373, there must be some evidence
that the relinquishment was voluntary. See De La Pena, 999 S.W.2d at 527 (finding non-parent
failed to rebut parental presumption where non-parent thwarted efforts of parent to regain possession,
even though initial relinquishment was voluntary). And the relinquishment must be made to the non-parent seeking custody. See In re Salgado, 53 S.W.3d 752, 758 at n.4 (Tex.App.--El Paso 2001,
orig. proceeding)(where court in dicta questioned the applicability of the statute to a parent who had
relinquished the child to his sister rather than the grandmother/movant during a CPS investigation).
Was the Presumption Rebutted?
            Thus, the grandparents here had to establish either (1) it was not in the children’s best interest
for Liliana to be appointed as a managing conservator because it would significantly impair the
children’s physical health or emotional development; or (2) Liliana voluntarily relinquished actual
care, control, and possession of the children to the grandparents for at least one year, a portion of
which was within ninety days preceding the date the intervention was filed, and appointment of the
grandparents as managing conservators was in the children’s best interest.
            Liliana, in effect, brings a traditional challenge to the alignment of constituent elements. The
trial court’s judgment is the capstone of the case, built upon elements which are themselves built
upon other elements. If an appellant preserves error properly, the trial court’s judgment must be
supported by conclusions of law applied to specific findings of fact that are supported by evidence
and by pleadings. See, e.g., Light v. Wilson, 663 S.W.2d 813, 814 (Tex. 1983). Where the pyramid
is misaligned, error may occur.
            We begin with the judgment which appointed the grandparents as sole managing conservators
of the children while appointing Liliana as a possessory conservator. The applicable conclusion of
law provides that it is in the best interest of the children that the grandparents be appointed sole
managing conservators. There is no conclusion that the appointment of Liliana as managing
conservator would not be in their best interests. The findings of fact are equally sparse: Liliana
cannot provide a stable home environment while the grandparents can, and have done so. With
regard to Section 153.131(a), the court failed to find that appointment of Liliana was not in the
children’s best interest because it would significantly impair the child’s physical health or emotional
development. Where findings of fact are filed by the trial court, they shall form the basis of the judgment upon all grounds of recovery. The judgment may not be supported on appeal by a presumption
or finding upon any ground of recovery no element of which has been found by the trial court. 
Consequently, the grandparents have not rebutted the parental presumption on this statutory basis. 
Certainly they did not plead it.


 
            We turn now to Section 153.373, which was pled. This statute creates a two-pronged
showing in order to rebut the parental presumption: (1) the parent has voluntarily relinquished the
children for a period of at least one year, a portion of which was within ninety days preceding the
date the intervention was filed, and (2) appointing a non-parent as managing conservator is in the
best interest of the children. The trial court appropriately made a finding of the second prong, and
there is some evidence to support it. The trial court made no finding under the first prong. Liliana
did not request additional findings on this omitted element to prevent it from being deemed on
appeal. 
                                                               Deemed Findings
            When the trial court gives express findings on at least one element of a claim or affirmative
defense, but omits other elements, implied findings on the omitted unrequested elements are deemed
to have been made in support of the judgment. In other words, if a party secures an express finding
on at least one element of an affirmative defense, then deemed findings arise as to the balance of the
elements. Lindner v. Hill, 691 S.W.2d 590 (Tex. 1985); Dunn v. Southern Farm Bureau Casualty
Insurance Co., 991 S.W.2d 467 (Tex.App.--Tyler 1999, pet. denied); Sears, Roebuck & Co. v.
Nichols, 819 S.W.2d 900 (Tex.App.--Houston [14th Dist.] 1991, writ denied). Where deemed
findings arise, it is not an appellee’s burden to request further findings or to complain of other
findings made. It is the appellant’s duty to attack both the express and implied findings. Liliana has
properly done so.
            The grandparents took possession of the children on December 17, 2001 and retained
possession through the date of the conservatorship hearing in March 2003. However, there is not
one shred of evidence--none--that Liliana voluntarily relinquished possession of her sons, and the
court did not so find. The children were removed from her possession not by Child Protective
Services, but by her sister, who then left the children with Gilberto, who happened to be living with
the grandparents. The grandparents and Gilberto then prevented her from seeing the boys over the
course of the next several months. The restrictions placed upon her rights of visitation under the
temporary orders cannot be described as voluntary. Had she violated them, she risked contempt
proceedings. At the conclusion of the September hearing, the trial court announced interim parenting
plans to be implemented by CPS which addressed goals, cooperation, discipline, handling of the
children’s possessions, education, day care, transportation, transition, medical treatment, and 
extracurricular activities. While it appears Liliana voluntarily signed these agreements, they do not
contain a relinquishment of her rights of possession. She even inquired of the judge whether she
would regain possession if she put all of her effort into becoming a better parent during the hiatus
until the conservatorship hearing. Consequently, there is no evidence to support the implied finding
and thus the evidence does not support the judgment. Where the controlling findings of fact do not
support a correct legal theory sufficient to support the judgment, an abuse of discretion is shown. 
Issue Two is sustained. Because of our resolution of this issue, we need not address Issues Three,
Four, and Five.
CONCLUSION 
            We next address the appropriate remedy. In most circumstances, a judgment is reversed and
rendered when a legal sufficiency challenge is sustained. However, we are accorded the flexibility
of remand when the interest of justice so requires, a remedy we seldom employ. See Tex.R.App.P.
43.3. It is clear from the record that the trial court below struggled to balance the safety and
protection of the children with the immaturity and naivete of an immigrant teenage mother. More
than a year has passed since the conservatorship hearing and we have no ability to determine the
present circumstances of any of the parties, nor do we have the luxury of sitting as a fact finder. 
Based on the peculiar procedural posture presented, we reverse and remand to the trial court.


August 12, 2004                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 1
Larsen, McClure, and Chew, JJ.