COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-07-00204-CV |
| | § | |
| | § | Appeal from |
| IN THE INTEREST OF B.A.W., | § | |
| A CHILD. | § | 16th District Court |
| | § | of Denton County, Texas |
| | § | |
| | § | (TC #2005-10628-16) |
| | § | |

## O P I N I O N

This is an appeal from a second modification order in a high-conflict suit affecting the parent child relationship. LaDonna Turner brings issues for review in which she complains of the orders for exchange of the child, the geographic restriction, the denial of her request for retroactive child support or reimbursement for educational expenses, and the denial of her request for attorneys' fees.

## PRELUDE

Trial courts are vested with broad discretion in suits affecting the parent child relationship for one very important reason. Parents get divorced. They are often angry, bitter, vengeful, and hostile toward one another. Sometimes they act in their own best interest rather than in the best interest of their child. The child may become a ping pong ball in a game of which parent can hurt the other more, even if the child gets hurt in the process. The trial court has the ability to gauge parental behavior and absorb the subtle nuances of righteous indignation played out in the judicial spotlight. That judge has the ability to see the fire in the eyes, hear the anger in the voice, and feel the sincerity in the heart. We do not have that luxury. We cannot tell from a cold page the heat of battle these parents have waged, nor can we say that one is more at fault than the other. The trial

court here was faced with crafting solutions for a little boy whose parents cannot or will not get along. The judge clearly tried to reduce the tension at the times of transfer and rightfully so. She also tried to equalize the burden of transportation across the north Texas metroplex. We must determine whether the model she developed constitutes an abuse of discretion. The short answer is, "No." For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

B.A.W. was born to LaDonna Turner and Donald Walker in July 1995 and the family lived in Ovilla, Ellis County, Texas. The record does not indicate the date of separation or divorce. The parties were appointed joint managing conservators with Turner having the right to establish the residence of the child. At some point, Turner moved to Carrollton in Denton County and remarried. Walker has continued to live in Ellis County.

Although the record does not indicate the date of filing or all of the relief requested, Walker filed a motion to modify. By order dated August 22, 2005, he was granted the exclusive right to make educational decisions for B.A.W. "limited to First Baptist Academy, Dallas, Texas."[1] Turner was granted the exclusive right to determine the primary residence of the child within Dallas County and contiguous counties. The court also entered a judgment against Walker for child support arrearages and for unreimbursed health care expenses, but terminated his obligation to pay further child support. In lieu thereof, Walker was ordered to pay "[a]ll tuition, fees, uniform costs, registration fees, lunches, sports fees and other costs associated with the child's attendance at First Baptist Academy located at 1704 Patterson Street, Dallas, Texas 75201."

B.A.W. was never enrolled in First Baptist Academy. Walker alleged that Turner failed to cooperate with the enrollment process by refusing to participate in a mandatory family interview

---

[1] Walker believed the school was an ideal choice because it is located in downtown Dallas, a short five-minute walk of the office building where both parties are employed.

required for admission. He tried eight or ten times to resolve the impasse, but by October 2005, it became impractical to transfer the child for the 2005-2006 school year. He intended to enroll the child for the 2006-2007 school term.

Turner recollected differently:

Q: And in truth and in fact, ma'am, you never did get on board with the transfer of this child from Carrollton to First Baptist Academy, correct?

A: That's incorrect.

Q: Did you go to the family meeting?

A: There was not one that I was aware of.

Q: Isn't it true that Don Walker tried to set up a family conference with you and you did not respond to him?

A: No, it's not true.

Q: Okay. And you knew that that family conference was a requirement in order for him to go to First Baptist Academy?

A: I knew it was a requirement, yes.

Q: Okay. And you were also ordered to cooperate with that transfer of the child from Carrollton to First Baptist Academy, correct?

A: Yes.

Interestingly enough, Turner had sought counselling from Dr. Linda Threats, a marriage and family therapist and forensic witness. According to her records, Dr. Threats was retained by Turner on September 1, 2005, nine days after the modification order was signed. Turner wanted an assessment of the child because he was "just feeling overwhelmed by the situation that was going on between – about his school and the issue between his mother and his father surrounding his education." Dr. Threats' notes from that first session indicate that Turner has "strong disagreement over school preference" and "plans to appeal ruling." Turner admitted making the statement. The session notes

from April 24, 2006 reflect that there has been "no resolution to school issue" and that "Mom making plans to return to court." Indeed she did.

On June 9, 2006, Turner filed suit to modify the 2005 order, seeking (1) the right to make educational decisions for the child; (2) prospective and retroactive child support; (3) enforcement of the prior judgment for child support and healthcare expenses; (4) reimbursement of healthcare expenses; and (5) attorney''s fees. Walker filed a counter-petition seeking modification of the geographic residence restriction, the possession schedule, and the terms for transfer of the child.

The final hearing was held on December 5, 2006 and the order was signed on March 29, 2007. The order (1) granted Turner the right to make the educational decisions for the child; (2) ordered Walker to pay child support; (3) denied Turner's request for reimbursement of expenses or retroactive support; (4) modified the geographic residence restriction; (5) modified the terms for transfer of the child for periods of possession; (6) denied Walker's request to change the visitation schedule; and (7) denied attorneys' fees.

## STANDARDS OF REVIEW

A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. *Serrano v. Union Planters Bank, N.A.*, 162 S.W.3d 576, 579 (Tex.App.--El Paso 2004, pet. denied). There are two separate "no evidence" claims. *Id.* When the party having the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law." *Id.* When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." *Id.*; *In re Estate of Livingston*, 999 S.W.2d 874, 879 (Tex.App.--El Paso 1999, no pet.).

An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record

shows: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *El Paso Independent School District v. Pabon*, 214 S.W.3d 37, 41 (Tex.App.--El Paso 2006, no pet.). In conducting our review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. Even if evidence is undisputed, it is the province of the trier of fact to draw from it whatever inferences it wishes so long as more than one inference is possible. *Id*. at 821. But if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. *Id*. We are also mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id*. at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id*. at 820. In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id*. at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the trier of fact must be allowed to do so. *Id*. at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the trier-of-fact. *Id*. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id*. at 827.

In reviewing a challenge to the factual sufficiency of the evidence supporting a vital fact, we must consider, weigh, and examine all of the evidence in the record, both supporting and against the finding, to decide whether the verdict should be set aside. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772

S.W.2d 442, 445 (Tex. 1989). When a party attacks the factual sufficiency of an adverse finding on an issue on which the opposing party has the burden of proof, we should set aside the verdict only if the evidence supporting the jury finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We are not permitted to substitute our judgment for that of the jury. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761-62 (Tex. 2003). Further, we bear in mind that the factfinder is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Id.*

Most orders arising from a suit affecting the parent/child relationship will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990); *Hodson v. Keiser,* 81 S.W.3d 363, 367 (Tex.App.-- El Paso 2002, no pet.). We engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court err in its application of discretion? *Hodson,* 81 S.W.3d at 367; *Lindsey v. Lindsey,* 965 S.W.2d 589, 592 (Tex.App.--El Paso 1998, no pet.). The traditional sufficiency inquiry applies to the first question. *Id.* Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision. In other words, we must conclude that the ruling was neither arbitrary nor unreasonable. *Hodson,* 81 S.W.3d at 367.

The term "abuse of discretion" is not susceptible to rigid definition. *Hodson,* 81 S.W.3d at 368; *Lindsey,* 965 S.W.2d at 591; *Landon v. Jean-Paul Budinger, Inc.,* 724 S.W.2d 931, 934 (Tex.App.--Austin 1987, no writ). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. *Hodson,* 81 S.W.3d at 368; *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex. 1985), *cert. denied,* 476 U.S.

1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), *citing Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Com.App. 1939, opinion adopted). Stated differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable. *Hodson,* 81 S.W.3d at 368; *Smithson v. Cessna Aircraft Company,* 665 S.W.2d 439, 443 (Tex. 1984); *Landry v. Travelers Insurance Co.,* 458 S.W.2d 649, 651 (Tex. 1970). The mere fact that a trial judge may decide a matter within her discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex. 1965); *Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (1959). An abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *See In the Interest of Gonzalez,* 993 S.W.2d 147, 155 (Tex.App.--San Antonio 1999, no pet.); *D.R. v. J.A.R.,* 894 S.W.2d 91, 95 (Tex.App.--Fort Worth 1995, writ denied).

## EXCHANGE OF POSSESSION

In her first issue for review, Turner complains that the terms of the order relating to the exchange of possession is unworkable and is not in the child's best interest. Within this framework, she develops three subtopics. First, she contends that the evidence is legally and factually insufficient to support the trial court's finding that the mutual work location of the parties is appropriate for the exchange of possession of the child. Second, she challenges the factual sufficiency of the evidence to support the court's finding that her work schedule is flexible enough that she can bear a portion of the transportation burden. Third, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that the designated times of the exchange of possession are in the child's best interest.

*Is the Work Location Appropriate for the Exchange of Possession?*

The trial court issued the following findings of fact and conclusions of law relevant to this complaint:

• Both Turner and Walker are employed by the Environmental Protection Agency (EPA);[2]

• Because they physically work in the same office building at 1445 Ross Avenue in downtown Dallas, their mutual work location is a logical place to exchange possession of the child.

• Both parties are able to adjust their respective work schedules to enable them to transport the child to and from the EPA building at the beginning and end of each period of court-ordered possession.

• The best interest of the child is served by requiring that the parties exchange possession at the corner of Ross and Field Streets outside EPA's offices.

In her first subtopic, Turner argues that a downtown street corner is an inappropriate place for the transfer to occur. She claims the location is unsafe because it is at the intersection of two busy streets where there is no parking. She suggested alternative locations, including the El Fenix Restaurant located nearby.[3] Walker counters that the parties cannot and do not communicate with each other. Thus, the common workplace is ideal for the exchange because it reduces the interaction between them and equalizes the burden of transportation. During the marriage, the couple lived in Ellis County. After the divorce, Turner moved to Denton County, which increased the transportation burden on Walker. By virtue of the prior modification order, Walker was allowed to designate the child's school. He selected a private academy just a few minutes from the office. Depending upon which parent had possession at the time, Mom or Dad - or even a grandparent - could easily pick the child up from school and head directly home. But Turner failed to cooperate and sought out a forensic therapist. Walker testified that his son was originally "on board" with

---

[2] Walker testified that one of the child's grandmothers works at EPA as well.

[3] At trial, Turner indicated her preference that Walker pick up and return the child to her in Carrollton, although she was willing to provide transportation from Walker's home to hers on Sunday evening following his weekend periods of possession. She did not suggest El Fenix until the hearing on her motion for new trial.

changing schools but that he had a change of heart. Instead of forcing the issue, Walker met with his former wife several times to try to resolve the issue. He first decided to postpone the move until mid-year, but when the boy resisted, Walker decided to wait until the next year. He believed the child was being pressured by Turner concerning the school issue. While he could have enforced the court order, he opted not to "[b]ecause he told me if I made the change, he would never forgive me."

As a result of her motion to modify, Turner was successful in regaining the right to direct the child's education and she clearly manifested her intent to keep him at Carrollton Christian Academy. She is unhappy, however, because the trial court did not order Walker to pick up and deliver the child in Carrollton.

It was well within the trial court's discretion to choose the office location rather than either party's residence. Tension and animosity suggest that a neutral exchange site is in the child's best interest. Fairness justifies a division of transportation duties. Because the court's findings are supported by sufficient evidence, we perceive no abuse of discretion.

*Is Turner's Schedule Adjustable?*

In the second subtopic, Turner contends that the evidence is factually insufficient to support the trial court's finding that she is able to adjust her work schedule to accommodate transporting the child at the times set forth in the order. She is required to surrender the child at the beginning of each period of possession at the corner of Ross and Field Streets. Walker is required to return the child to the same location. Here are the specifics of the order:

> Except as otherwise explicitly provided in this Possession Order, when DONALD WALKER resides 100 miles or less from the primary residence of the child, DONALD WALKER shall have the right to possession of the child as follows:
>
> 1. Weekends--On weekends, beginning at the time the child's school is regularly dismissed, on the first, third, and fifth Friday of each month and ending at 7:30 a.m. on the day the child's school resumes after the weekend. The child shall be surrendered at the EPA office in Dallas.

2. Weekend Possession Extended by a Holiday--Except as otherwise explicitly provided in this Possession Order, if a weekend period of possession by DONALD WALKER begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at the time the child's school is regularly dismissed on the Thursday immediately preceding the Friday holiday or school holiday or end at 7:30 a.m. on the day that the child's school resumes after the school holiday, as applicable. The child shall be surrendered at the EPA office in Dallas.

3. Thursdays--On Thursday of each week during the regular school term, beginning at 3:45 p.m. and ending at 8:00 p.m. on Thursday. The child shall be surrendered at the EPA office in Dallas."

Turner argues that although there is some evidence that she has the flexibility to start her workday early if she wants to leave early, the flexibility of her government job has limits. On direct examination, Turner testified:

Q: And what are your work hours, typically?

A: (Turner) They vary. I'm on a flexible schedule. I generally get there around 8:45 and work till about 5:15, just depending on the days of the week.

Q: And then when do you cease work at the end of the day?

A: Around 5:15, approximately.

Q: What days of the week do you normally work?

A. Monday, Tuesday, Wednesday. I work at home Thursday, and I'm in the office Friday.

Turner argues she must work a full day and she is not allowed to accumulate more than two hours of compensatory time. She claims the order will often require her to use accrued vacation. She offered no testimony to that fact at trial. And of course, the trial court was free to infer that Walker suffered from the same employment restrictions.

It is for the fact finder to determine the weight to be given to the testimony and to resolve

any conflicts in the evidence.  *See Carrasco v. Goatcher*, 623 S.W.2d 769, 772 (Tex.App.--El Paso 1981, no writ).  Turner does not direct us to any testimony in the record, that her "flexible schedule" will not allow her to participate in the transportation of the child.  Because the evidence is factually sufficient to support the trial court's findings, we perceive no abuse of discretion.

*Are the Times of Exchange Appropriate?*

In her third subtopic, Turner complains of the sufficiency of the evidence to support the trial court's finding that the best interest of the child will be served by requiring an exchange of possession at the times set forth in the order.  Specifically, she objects to an exchange at 3:45 p.m. on Thursday afternoons, 8 p.m. on Thursday evenings, after school is dismissed on Friday afternoons, and at 7:30 a.m. on Monday mornings.

The child attends Carrollton Christian Academy located on the north side of Carrollton in Denton County.  Classes are in session from 8:05 a.m. until 3:10 p.m. each day.  The order requires Turner to deliver the child to Walker at 3:45 p.m. every Thursday during the school year and at the time school is regularly dismissed on the first, third, and fifth Fridays of the month.  The order also requires Turner to pick the child up at 7:30 a.m. on Monday mornings after weekend visitation so that she can take him to school.  She claims that on these occasions, she has no more than 35 minutes to get the child through rush hour traffic in both Denton County and Dallas County.  In fact, she will need to pull the child out of school early in order to have him at the EPA building by the time school is dismissed.

Walker responds that Turner is only being asked to provide the same transportation that she imposed upon him under the prior order.  He argues that regardless of who does the driving, the distance travelled by the child to the exchange point is the same.  The first leg of the transportation is either from Carrollton Christian Academy or from Turner's residence nearby.  The second leg of

travel for the child is with the Walker from the EPA to his home in Ellis County. Walker points out that Turner moved away from Ellis County to Denton County, increasing the transportation burden. Until the entry of the order, Walker drove to Carrollton in heavy traffic to pick up the child at the beginning of each period of possession.

Generally speaking, the 3:45 p.m. exchange on Thursdays will not be a problem. Clearly, traffic will be worse on some days than others. Nor is it particularly onerous on Turner as she works at home on those days. She is, no doubt, aggravated about having to return at 8 p.m. to pick up her son. But the trial court could well have found her attitude about Thursday visitations to be telling. She wanted Walker to pick up the child in Carrolton and simply visit there. She was opposed to Thursday overnight visits. As for Friday transfers, logic dictates the concept of the order is that the child will be picked up at school and immediately driven to the EPA building. It is doubtful that the court intended that the child be withdrawn from classes early. Rather, it is likely that the terminology was a simple carry forward from the prior order when Walker would be picking up the child. Finally, we turn to Monday morning delivery. At least since the time of the prior order, Walker has been driving the 38 miles from his home to Carrolton. He will now drive to work, only 23 miles away.[4] A simple view of a map indicates that a direct route from Ovilla to Carrollton, and vice-versa, goes straight through Dallas. While Dallas is not exactly half way, it's pretty close.

Relocation always complicates visitation post-divorce. The standard possession order recognizes that fact by drawing a 100-mile line in the sand. While these parents live within the statutory parameters, some cooperation will be necessary. It has not been forthcoming in the past. The trial court cannot be faulted for trying an innovative approach. Is it perfect? No, but we would

---

[4] Distances available at www.mapquest.com. Ovilla to Carrolton is roughly 38 miles, which Mapquest estimates at 46 minutes. It is 23 miles from Ovilla to the EPA building, which involves a 29-minute drive. The EPA building is 17 miles from Carrolton with an estimated 22-minute drive-time.

be hard pressed to conclude that she has abused her discretion. We overrule Issue One in its entirety.

## GEOGRAPHIC RESTRICTION

In her second issue for review, Turner complains that the trial court abused its discretion in modifying the geographic restriction for the child's residence. As with her first issue, she raises three subtopics. First, she challenges the sufficiency of the evidence to support the trial court's finding that it is not in the child's best interest to include Ellis County as part of the geographic area within which Turner may establish primary residence. Similarly, her second subtopic challenges the sufficiency of the evidence to support the trial court's finding that the best interest of the child will be served by restricting primary residence to Denton County and contiguous counties. Third, she attacks the trial court's implied finding that there has been a material change of circumstance that would entitle Walker to a modification of the geographic restriction. We will discuss the subpoints together as they are inherently interrelated.

The prior order included a geographic restriction to Dallas and contiguous counties (i.e. Dallas, Denton, Rockwall, Ellis, Collin, Tarrant, and Kaufman counties). The order at issue here changes the geographic restriction to Denton County and contiguous counties. The difference is significant. Ellis County is contiguous to Dallas County but it is not contiguous to Denton County.

Depending on whom the trial court believed, a fair reading of the record indicates that Turner had suggested Walker move to Denton County and that he had considered it. But he rejected the idea because he thought Turner would then turn around and move back to Ellis County where her parents reside. In his view, this would simply flip-flop the transportation issues. Given the parties' hostility and inability to communicate, he believed his fear was well-founded.

Turner argues on appeal that Walker never had any intention of moving to Carrollton. He

continues to reside in the parties' prior marital residence and has never attempted to sell the home. She claims it would make more sense to allow her to move back to Ovilla to reduce the transportation time. The record is devoid of evidence that Turner plans such a move, that her current husband supports such a move, or that they have investigated the sale of their Carrollton home. Walker considered her argument a ploy and he suggests the new order ensures that Turner cannot frustrate Walker's desire to have a close relationship with his son by moving back to Ellis County once Walker moves to Denton County. He reminds us that Turner's opposition to First Baptist Academy justifies his fear that Turner's goal is to frustrate his efforts to be in close proximity to his son.

The trial court as the factfinder chose to believe Walker and the record supports her concerns. She was well within her discretion to consider Turner's track record of cooperation, or lack thereof. She could have believed Walker's testimony that the child was agreeable to First Baptist Academy until his mother began to pressure him. Her dislike of the prior order is evident from Dr. Threat's notes that she was planning an appeal; that she sought forensic assistance within ten days of the prior order; that she wholly failed to cooperate with Walker's effort to enroll the child; and that while she was able to forestall it for one school year, she was planning this modification all along. The court could also consider Turner's testimony that Walker should provide all of the transportation, with the exception of Sunday night -- which is no longer an issue since Walker will keep the child until Monday morning. From this evidence, the trial court could properly infer that Turner may well intend the scheme that Walker envisioned. And it most certainly constitutes legally and factually sufficient evidence to support the trial court's finding that there had been a material and substantial change in circumstances since the prior order. We overrule Issue Two in its entirety.

**CHILD SUPPORT AND REIMBURSEMENT**

In Issue Three, Turner complains that the trial court erred by refusing her request for retroactive child support or reimbursement for educational expenses incurred for the child. As we noted in our factual summary, the prior order required Walker to pay all of the educational expenses at First Baptist Academy in lieu of child support. The child was not enrolled, so Walker did not pay those expenses, nor did he pay the expenses incurred in connection with the child's attendance at Carrollton Christian Academy. In denying her request, the trial court specifically found that Turner presented no evidence concerning the educational expenses she had incurred.

Our review of the record reveals the following testimony:

Q.    All right. Have you been paid, so far as you know, all the support due under the Temporary Orders?

A.    (Turner) As far as I know, yes, I have.

Q.    Did you receive any assistance from Mr. Walker for   tuition and fees at CCA for 05/06?

A.    No, I did not.

Q.    Did you ask?

A.    Yes, I did.

Q.    Did you receive any financial assistance from him that he gave you voluntarily before you filed your lawsuit?

A.    No.

Q.    Did you ask?

A.    Yes, I did.

Q.    Are you asking the Court to consider some form of lump sum back child support?

A.    Yes.

Turner stated neither an amount of money nor a period of time to which the lump sum award should relate. She also failed to offer any evidence on the educational reimbursement issue, such as the tuition she paid or expenses she incurred for fees and uniforms. We overrule Issue Three.

## ATTORNEY'S FEES

In her fourth and final issue, Turner argues that the trial court abused its discretion by refusing to grant attorney's fees with regard to her motion for enforcement of child support. The motion was filed as a component of her motion to modify and the hearing was conducted at the same time temporary orders were granted. She contends that she established her entitlement as a matter of law, which is a legal sufficiency claim. *Serrano*, 162 S.W.3d at 579 (when the party having the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law").

If a court finds that a respondent has failed to make child support payments, the court shall order the respondent to pay the movant's reasonable attorney's fees and all court costs in addition to the arrearages. TEX.FAM.CODE ANN. § 157.167 (Vernon 2008). Fees and costs ordered under this subsection may be enforced by any means available for the enforcement of child support, including contempt.

Turner argues she proved that Walker had been ordered to make payments under the prior orders of the court, and that those payments had not been made. Walker paid certain arrearages just prior to the hearing. In denying her motion, the trial court specifically found a fatal variation between the pleadings and the proof. Because she does not challenge that finding on appeal, we accept as true that the pleadings concerning the dates and amount of arrearages did not comport with the evidence. Consequently, we find no abuse its discretion. Since she failed to prove her entitlement to recovery, she did not prove an entitlement to fees as a matter of law. We overrule

Issue Four and affirm the judgment of the trial court.

November 24, 2009

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.