

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00345-CV

_____

IN THE INTEREST OF L.B., A CHILD

_____

On Appeal from County Court at Law No. 2
Wise County, Texas
Trial Court No. CV17-08-696

_____

Before Gabriel, Kerr, and Wallach, JJ.
Memorandum Opinion by Justice Gabriel

**MEMORANDUM OPINION**

Appellant S.P. (Sally) sought to modify a prior possession and access order to her son L.B. (Luke). The trial court explicitly denied Sally's request to be granted the right to determine Luke's primary residence and implicitly denied her request to require Luke's nonparent, joint managing conservators—Luke's paternal grandparents P.D. and T.D. (Peter and Tina)—to pay child support. The trial court further modified the custody-exchange location from the Sulphur Springs Police Department to the Sherman Police Department. In three issues, Sally argues that these rulings were abuses of the trial court's discretion. We disagree. The evidence before the trial court sufficiently supported the trial court's determination that Sally should not be allowed to designate Luke's primary residence because there had been no material and substantial change in circumstances and because it would not be in Luke's best interest. Because Sally's application for child-support payments from Peter and Tina was dependent on being granted the right to designate Luke's primary residence, the denial of this requested modification rendered her child-support request moot. Regarding the trial court's modification to the custodial-exchange location, the evidence sufficiently supported the trial court's implicit findings that there had been a material and substantial change on this issue and that the modification would be in Luke's best interest.

Sally also contends in a separate issue that the trial court abused its discretion by admitting the testimony of Dr. Lisa Elliott—a psychologist who began treating

Luke in 2012 when he was three years old—because her expert opinion was unreliable, not relevant, and not sufficiently based on facts. And Sally adds that because Peter and Tina prevented her from taking Luke to a counselor in Texarkana after she sought to modify custody and access, she was effectively barred from testing Elliott's opinion and, therefore, from properly presenting her modification arguments. We conclude that Elliott's testimony met the admissibility requirements and that Sally was not prevented from presenting any aspect of her case for modification.

Accordingly, we affirm the trial court's order denying Sally's motion to exclude Elliott's testimony and the trial court's modification order.

## I. BACKGROUND

In May 2016, the County Court at Law of Bowie County held a trial in a suit affecting the parent–child relationship (SAPCR) brought by Peter and Tina to gain custody of Luke and by the Department of Family and Protective Services (DFPS) to terminate Luke's father's and Sally's parental rights to Luke.[1] The trial court, based on a jury verdict, terminated Luke's father's parental rights, denied DFPS's termination petition as to Sally, and appointed Peter, Tina, and Sally joint managing conservators of Luke (the SAPCR order). *See* Tex. Fam. Code Ann. §§ 153.005, 153.372, 161.001(b), 161.205–.206  The court granted Peter and Tina the exclusive right to

---

[1]The record is unclear about Peter and Tina's exact relationship to Luke, but it appears that Luke's father is Tina's son from a prior marriage and that Luke's father and Sally had a younger son who died, possibly as a result of Luke's father's actions.

3

designate Luke's primary residence and ordered Sally to make monthly $300 child-support payments to Peter and Tina. *See id.* §§ 153.134(b), 153.138, 154.001. A custodial condition in the court's standard possession schedule required the parties to surrender custody of Luke at the Sherman Police Department until Peter and Tina moved from Wichita Falls to Paradise (located in Wise County), at which time the exchange location was to change to the Sulphur Springs Police Department. Peter and Tina moved to Paradise in June 2016; Sally lives with her mother and stepfather in Texarkana.[2] The exchange condition allowed the parties to mutually agree to a different exchange location. The parties later agreed to exchange custody in Greenville.[3]

In May 2017, Sally filed a petition to modify the SAPCR order in County Court at Law No. 2 of Wise County, requesting not only the right to designate Luke's primary residence but also child-support payments from Peter and Tina if she were allowed to designate Luke's residence.[4] *See id.* §§ 156.101, 156.401, 157.001–.002. These requests were based on her allegations that the modifications would be in

---

[2]Sulphur Springs is approximately 150 miles from Wise County and approximately 100 miles from Texarkana.

[3]Greenville is approximately 110 miles from Wise County and approximately 130 miles from Texarkana.

[4]Sally also sought to enforce the SAPCR order, alleging that Peter and Tina had repeatedly violated the order regarding possession and access, but Sally raises no argument directed to enforcement.

Luke's best interest and that Luke's or another party's circumstances had materially and substantially changed since the SAPCR order. She further stated in an affidavit that she believed Luke's environment with Peter and Tina significantly impaired his physical health and emotional development, requiring a change in the conservator having the right to designate his primary residence. *See id.* § 156.102(a)–(b).

Peter and Tina filed a counterpetition to modify asking that Sally's child-support obligation be increased because it was not "in substantial compliance with the guidelines." This modification request was based on their assertions that there had been a material and substantial change in circumstances and that the modification would be in Luke's best interest. Peter and Tina also requested that the exchange condition be changed to Sherman based on a material and substantial change in circumstances.

In November 2018, Peter and Tina designated Elliott as an expert to testify regarding Luke's treatment. They attached Elliott's "Progress Report" in which she opined that Luke had improved since being in Peter and Tina's care but that he regresses and his anxiety increases after being with Sally:

> Overall, [Luke] is doing very well emotionally and socially; he has made tremendous strides in his developmental progress, including emotional and social functioning, as well as academic progress, while under the care of his paternal grandparents. . . . [Luke] responds best to structure and has demonstrated, via documented school testing, a regression in his reading skills over the summer months when his reading program is not implemented consistently. Of concern is a recent increase in anxiety after visits with his mother and maternal grandparents. This behavioral change is noted by both his paternal grandparents and his teachers,

5

including symptoms of a lower frustration tolerance, variable attention, crying, and nightmares of being "locked away from [Tina]." [Luke's] anxiety appears to be associated with questions that have arisen as a result of direct conversations with his mother and maternal grandparents that are focused on upcoming legal hearings, why and how his baby brother died, why he is living with [Peter and Tina], and concerns that he will have to leave his paternal grandparents. [Luke] reported that his mother shared with him that they are going to court to get him. This naturally upsets [Luke], he expressed a great deal of stress and angst, crying and clinging to [Tina]. . . .

. . . [Luke] has made tremendous progress with his medication treatment [for attention deficit hyperactivity]; consistency in his treatment plan is critical. There has been [a] lack of support and consistency when in his mother's care.

Sally filed a motion to exclude Elliott's report because Elliott did not disclose the data she relied on and because Sally alleged that Elliott's opinion was not relevant to a determination of Luke's changed circumstances. *See* Tex. R. Evid. 702, 705. The trial court held a hearing on Sally's motion, concluded that Sally's arguments went to the weight of Elliott's opinion evidence and not to its admissibility, and denied the motion.

The trial court then held an evidentiary hearing on the petitions to modify. Elliott testified, consistent with her report, that Luke had improved in Peter and Tina's care and that Sally was relatively uninvolved, disagreed with Luke's treatment, and increased Luke's regression and anxiety. Sally asserted that Peter and Tina had alienated her from Luke's life by failing to keep her informed as required and that they had "minimized and thwarted her contact" with Luke. Peter and Tina pointed to Luke's improvement since being in their care, Sally's lack of participation in parenting,

6

Sally's talking to Luke about how his brother had died and about how she would get custody of him, and her refusal to give Luke his needed medications. They further introduced evidence of the logistical problems with exchanging custody in Greenville and the benefits to Luke of exchanging in Sherman. At the conclusion of the hearing, the trial court stated that it would not decide the petitions that day, choosing to "sleep on the[m] for a few days," but indicated that Peter and Tina could not be ordered to pay child support "at least under these circumstances."

In the resulting modification order, the trial court denied Sally's request to have the right to designate Luke's primary residence, specifically finding that Luke's, Sally's, Peter's, and Tina's circumstances had not materially and substantially changed regarding this issue. But the court modified the exchange location to the Sherman Police Department.[5] Finally, the court ordered Sally to pay Peter and Tina $339 in child support each month. The trial court denied all other requested relief, presumably including Sally's conditional request for child support. No party asked the trial court to enter findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296.

Sally filed a motion for new trial, arguing that the modifications were "improper and inconsistent with th[e] Court's finding[]" that the parties' circumstances had not materially and substantially changed since the SAPCR order.

---

[5]Sherman is approximately 84 miles from Wise County and approximately 158 miles from Texarkana.

The motion was overruled by operation of law, and Sally now appeals the modification order. *See* Tex. R. Civ. P. 329b(c).

## II. ADMISSION OF ELLIOTT'S OPINION EVIDENCE

In her second issue,[6] Sally contends that the trial court abused its discretion by denying her motion to exclude Elliott's progress report and her later testimony based on that report. She argues that Elliott's report was inadmissible because she failed to specify the data she relied on in reaching her opinion and because any supporting data was insufficient to support her conclusions. *See* Tex. R. Evid. 703, 705(c). Sally additionally points to the fact that after she filed her modification petition, she made an appointment for Luke to see a counselor in Texarkana and informed Peter and Tina. Peter and Tina immediately told the counselor that Luke was already being seen by Elliott. Peter and Tina attended the counseling session and again informed the counselor that Luke was under Elliott's care and that the counselor was not authorized under Texas law to see Luke without Elliott's knowledge. *See* 22 Tex. Admin. Code § 681.41(n) (2019) (Tex. State Bd. of Examiners of Prof'l Counselors, General Ethical Requirements). The counselor later informed Peter and Tina that "there would be no further contact with [Luke] through [the counselor's] office." Sally denied that she made the counseling appointment "for litigation purposes." Sally now asserts that Peter and Tina's conduct and the failures in Elliott's report

---

[6]We address Sally's four issues out of order.

8

prevented her from challenging Elliott's opinion or from retaining her own rebuttal expert.

## A. STANDARD OF REVIEW

We review the trial court's admission of Elliott's expert testimony for an abuse of discretion. *See In re C.L.C.*, No. 04-11-00920-CV, 2013 WL 1149270, at \*4 (Tex. App.—San Antonio Mar. 20, 2013, no pet.) (mem. op.) (citing *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995)). Sally, however, argues that a no-evidence standard of review applies to her evidentiary complaint because Elliott's unreliable report and testimony constituted no evidence. We disagree.

When an abuse-of-discretion standard is applied to an issue, traditional sufficiency challenges are not considered independent grounds of error but are relevant factors in assessing the trial court's exercise of its discretion. *See In re M.S.F.*, 383 S.W.3d 712, 716 (Tex. App.—Amarillo 2012, no pet.); *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g); *McGuire v. McGuire*, 4 S.W.3d 382, 387 n.2 (Tex. App.—Houston [1st Dist.] 1999, no pet.). And Sally's reliance on legal insufficiency is conditional—she does not argue that the evidence is insufficient with Elliott's opinion but that if that evidence were excluded, there would be no evidence to support the trial court's modification order. Thus, we must first determine whether the trial court abused its discretion by admitting Elliott's report and testimony, deferring to the trial court's implicit factual and credibility determinations, before determining if their absence affects the sufficiency of the

9

evidence to support the trial court's modifications. *See George v. Jeppeson*, 238 S.W.3d 463, 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

In evidentiary matters, a trial court is a gatekeeper, ensuring expert testimony is relevant and based on a reliable foundation. *See In re J.R.*, 501 S.W.3d 738, 748 (Tex. App.—Waco 2016, no pet.). Although expert testimony will generally be relevant if it will assist the fact-finder in determining a fact at issue, it must be based on sufficient underlying facts or data such that there is no analytical gap between the foundational data and the opinion. *See* Tex. R. Evid. 702, 703, 705(c); *In re D.S.*, 19 S.W.3d 525, 529 (Tex. App.—Fort Worth 2000, no pet.) (citing *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998)).

### B. ADMISSIBILITY

Elliott indicated in her report that she based her opinions regarding Luke's progress and prognosis on her neuropsychological testing, her review of Luke's school records, information recounted by Tina, Luke's teachers' opinions, and Luke's behaviors during sessions. Elliott noted that between May 2016 and November 2017, Sally attended only two of Luke's twelve sessions. At the modification hearing, Elliott testified that the information she relied on typically forms the basis for treatment methods and opinions regarding any patient:

> [T]he predominate [basis], of course, is going to be on your client, your patient, him or her. I also take in collateral information from the parents or caregivers, as well as any kind of physicians or other medical specialists, and any other collateral resources, like teachers. . . . And the

10

other thing, too, is observation. And if we do testing, it's going to be testing, as well.

Elliott's report and subsequent testimony sufficiently established that she relied on information typical in her field in reaching her opinion regarding Luke and, taken in tandem, do not reveal an analytical gap between the information relied upon and her expert opinion. *See* Tex. R. Evid. 703; *J.R.*, 501 S.W.3d at 748–49; *In re Commitment of Fields*, No. 09-09-00005-CV, 2009 WL 4841033, at *4 (Tex. App.—Beaumont Dec. 17, 2009, pet. denied) (mem. op.); *SeaRiver Maritime, Inc. v. Pike*, No. 13-05-0033-CV, 2006 WL 1553264, at *4 (Tex. App.—Corpus Christi–Edinburg June 8, 2006, pet. denied) (mem. op.). We also disagree with Sally's assertion that because Elliott did not specify the supporting underlying data in her report and did not attach the relied-upon school records, her opinion was inadmissible. Underlying facts or data are not required to be disclosed initially; the specifics of the underlying facts and data are subjects for voir dire or cross-examination. *See* Tex. R. Evid. 705(a)–(b). Accordingly, the trial court did not abuse its discretion by admitting Elliott's report and expert testimony. *See J.R.*, 501 S.W.3d at 748–49.

We also reject Sally's argument that the trial court's admission of this evidence prevented her from rebutting Elliott's opinion and presenting her modification arguments. We see no indication in the record that Sally was unable to test Elliott's opinions through cross-examination or that she was somehow prevented from retaining her own expert on the issue, especially when Peter and Tina notified Sally of

11

Elliott's opinion six months before the modification hearing. *Cf. In re Atlas Tubular, L.P.*, 296 S.W.3d 363, 366 n.1 (Tex. App.—Corpus Christi–Edinburg 2009, orig. proceeding [mand. denied]) ("There is nothing preventing Atlas from introducing similar evidence at trial to rebut the interrogatory answers and admissions deemed to have been provided by Maharashtra pursuant to the sanctions order."). Further, Tina testified that (1) she never prevented Sally from obtaining Luke's medical and school records, which Sally had the right to request, or from talking to Elliott and (2) she would have had no problem with Luke's seeing a counselor in Texarkana if Elliott had approved. Although Sally unsuccessfully attempted to have Luke seen by a different counselor shortly after she filed her modification petition, this similarly did not prevent Sally from retaining a consulting expert, from talking to Elliott about Luke's medical records, from talking to Luke's teachers about his test results, or from otherwise presenting her case for modification. We overrule issue two.

### III. MODIFICATION ORDER

#### A. CUSTODIAL-EXCHANGE LOCATION

In her first issue, Sally contends that the trial court abused its discretion by modifying the custodial-exchange location from Greenville to Sherman because the trial court found no material and substantial change in circumstances and failed to find that the modification was in Luke's best interest. She also attacks the legal sufficiency of the evidence to support the trial court's modification, arguing that no

evidence could support a finding that such a change was in Luke's best interest or was based on a material and substantial change in circumstances since the SAPCR order.[7]

We review the modification for an abuse of discretion. *See In re H.D.C.*, 474 S.W.3d 758, 763 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *T.D.C.*, 91 S.W.3d at 872. Because Peter and Sally sought the modification, they had the burden to show, by a preponderance, both a substantial and material change in circumstances and that the modification would be in Luke's best interest. *See Epps v. Deboise*, 537 S.W.3d 238, 245 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied). To determine whether a sufficient change in circumstance occurred to support a modification, the trial court is to compare evidence of the conditions that existed at the time of the prior SAPCR order with the evidence of the conditions that existed at the time of the modification hearing. *In re E.M.*, No. 02-18-00351-CV, 2019 WL 2635565, at *6 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.); *Anderson v. Carranza*, No. 14-10-00600-CV, 2011 WL 1631792, at *4–5 (Tex. App.—Houston [14th Dist.] Apr. 28, 2011, no pet.) (mem. op.).

In the "*Findings*" portion of the modification order, the trial court expressed its no-material-and-substantial-change finding in the paragraph denying Sally's request to have the right to designate Luke's primary residence:

---

[7]She does not raise a factual-insufficiency argument here.

> The Court finds the circumstances of the child and the Joint Managing Conservators have not materially and substantially changed[.] Therefore, the Court DENIES Petitioner, [Sally's] request to be appointed the person having the primary right to determine the residency of the child. IT IS ORDERED that the parties shall remain Joint Managing Conservators.

The custodial-exchange modification was in a separate, stand-alone paragraph of the findings section and did not include a similar, explicit no-change-in-circumstances finding with it: "IT IS ORDERED that the parties shall exchange the child at the parking lot of the Sherman, Texas Police Station, [address]." In short, the no-change-in-circumstances finding was placed only with the residency-determination portion of the trial court's order, not with the custodial-exchange modification portion.

Although Sally is correct that a SAPCR modification must be based on a material and substantial change in circumstances and on Luke's best interest, *see* Tex. Fam. Code Ann. § 156.101(a)(1), the absence of any trial court findings or conclusions here as to the custodial-exchange provision allows us to imply all necessary, supporting fact findings (including a change in circumstances regarding the exchange condition and Luke's best interest) if those implied findings are factually supported in the record. *See In re M.V.*, 583 S.W.3d 354, 360–61 (Tex. App.—El Paso 2019, no pet.); *Zeifman*, 212 S.W.3d at 588; *In re B.N.F.*, 120 S.W.3d 873, 876–77 (Tex. App.—Fort Worth 2003, no pet.). To make that determination (and based on Sally's legal-insufficiency argument), we embark on a two pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion and (2) whether

the trial court erred in its application of its discretion. *See Gerges v. Gerges*, No. 08-19-00006-CV, 2020 WL 913839, at *3 (Tex. App.—El Paso Feb. 26, 2020, no pet. h.).

Again, our review of the legal sufficiency of the evidence is a relevant factor informing our first inquiry. *See id.*; *T.D.C.*, 91 S.W.3d at 872. To assay legal sufficiency, we consider the evidence in the light most favorable to the finding if a reasonable fact-finder could, and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *See Gerges*, 2020 WL 913839, at *3; *E.M.*, 2019 WL 2635565, at *5.

Peter testified that while he, Tina, and Luke lived in Wichita Falls, they met Sally in Sherman for four years until the SAPCR order directed that the exchange take place in Sulphur Springs. Because Sulphur Springs was "too far" from Wise County, Sally agreed to meet them in Greenville after balking at Peter and Tina's request for a return to Sherman. The route from Wise County to Greenville commonly is a "racetrack situation" with "choke[d]" traffic and accidents, requiring Peter to get Luke from school thirty minutes before the school's regular 3:30 p.m. dismissal every other Friday in order to arrive in Greenville for the 6:00 p.m. exchange. And the length of the return trip from Greenville to Wise County on Sundays resulted in a delay in getting Luke "in bed for school the next morning." Peter testified that it was in Luke's best interest to set the exchange location in Sherman. Tina also emphasized the increasing traffic difficulties between Wise County and Greenville since the SAPCR order and noted that they were caused by "new construction" along that

15

route. Peter stated that he and Tina requested a return to Sherman for the exchange because "[i]t's open highway for both of us. [Luke] spends less time in the car, and it's a safer route" than the routes to Greenville. Sally was opposed to a change to Sherman because Luke "would spend more time in the vehicle going to Sherman," which she testified "is about 30 minutes to an hour more" than meeting in Greenville or Sulphur Springs. Sally disputed that the traffic from Wise County to Greenville on a Friday was a longer drive, timewise, than the drive between Wise County and Sherman.

This competing evidence afforded the trial court with the discretion to credit Peter and Tina's testimony about the logistical problems with Greenville as opposed to Sherman and supports a best-interest finding. *See M.V.*, 583 S.W.3d at 361; *In re B.A.W.*, 311 S.W.3d 544, 554–55 (Tex. App.—El Paso 2009, no pet.). And this testimony also showed a change in circumstances since the SAPCR order set the exchange in Sulphur Springs: the parties' compromise change to Greenville after Sally would not agree to returning to a Sherman exchange location, which had previously worked; the increase in traffic between Wise County and Greenville; and the necessity that Luke miss school regularly while spending more time travelling than he had before. We cannot second-guess the trial court's credibility determinations and cannot conclude that there was no evidence upon which the trial court could have so

16

exercised its discretion.[8]  *See In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied).  The trial court did not err in applying its discretion to the custodial-exchange modification because the credited facts supported the trial court's implicit findings that (1) it would be in Luke's best interest to change the exchange location and (2) a material and substantial change in circumstances had occurred since the SAPCR order.  *See, e.g.*, *In re M.C.K.*, No. 14-17-00289-CV, 2018 WL 1955065, at *7 (Tex. App.—Houston [14th Dist.] Apr. 26, 2018, no pet.) (mem. op.); *In re K.B.L.*, No. 07-16-00285-CV, 2017 WL 4872784, at *3 (Tex. App.—Amarillo Oct. 24, 2017, no pet.) (mem. op.); *In re C.C.J.*, 244 S.W.3d 911, 923–24 (Tex. App.—Dallas 2008, no pet.); *J.R.D.*, 169 S.W.3d at 743–44.  We overrule issue one.

## B.  RIGHT TO DESIGNATE PRIMARY RESIDENCE

In her third issue, Sally argues that the trial court abused its discretion by refusing to allow her to designate Luke's primary residence based on (1) Peter and Tina's conduct "giv[ing] rise to parental alienation," which constituted a material and substantial change in circumstances, and (2) Luke's best interest.  We apply the same review standards to this issue as we did in determining the residence-designation issue—an abuse-of-discretion standard considering as a factor the legal and factual sufficiency of the evidence to support that discretion.  To review factual sufficiency,

---

[8]Even if Sally had challenged the factual sufficiency of the evidence to support this modification, this recited evidence would be factually sufficient, leading to a conclusion that the trial court did not abuse its discretion.

we consider and weigh all of the evidence and determine if the trial court's finding was against the great weight and preponderance of that evidence. *E.M.*, 2019 WL 2635565, at *5. Sally bore the burden to establish her case for modification by a preponderance. *See Epps*, 537 S.W.3d at 245; *Zeifman*, 212 S.W.3d at 589.

Sally relies on Peter and Tina's "course of conduct" that she claims attempted to "thwart and minimize" her contact with Luke, leading to Sally's allegation that Luke's residence should be determined at her sole discretion:

- Peter and Tina's ultimately denied request to reduce Sally's bi-weekly Skype visits with Luke;

- Their failure to notify Sally that they were taking Luke on a four-day cruise in August 2016;

- Their failure to consistently notify Sally of school meetings regarding Luke's individual-education-program plan[9] or to list her as an emergency contact with Luke's school; and

- Their "mindset" that Sally does not have the tools to raise Luke, which will "inevitably pour into the mind of [Luke] and cause [him] to believe his mother is not able to care for him and take care of him as a mother should."

She adds that because she, Peter, and Tina cannot "reach shared decisions" and because Peter and Tina cannot "encourage or accept a positive relationship" between

---

[9]Luke initially qualified for special-education services based on his "emotional disturbance," speech impairment, and ADHD. By the end of his second-grade year in 2018, he no longer qualified for such services based on an emotional disturbance or speech impairment. One of his teachers testified she had never before had a special-education student become ineligible for those services after qualifying based on an emotional disturbance.

Luke and Sally, Luke's best interest would be better served by Sally having the right to designate his primary residence.

Again, the trial court did not enter findings and conclusions; thus, we imply all factually supported findings necessary to the trial court's holding. *See B.N.F.*, 120 S.W.3d at 876–77. Although Sally lists several actions Peter and Tina have taken since the SAPCR order, "it is not the fact of change that drives a modification but whether these changes are material and substantial changes in the parenting arrangement." *E.M.*, 2019 WL 2635565, at *6.

Although Peter and Tina sought to reduce Luke's Skype visits with Sally in their modification petition, Peter and Tina did not unilaterally reduce the visits, and the trial court implicitly denied this request in the modification order; thus, there was never a change in the Skype visits. Tina testified that they took Luke on a cruise but that a passport was not required; thus, the travel-notification requirement in the prior SAPCR order arguably was not triggered. Regarding the school notifications, four of Luke's teachers testified that Sally never attempted to contact them regarding Luke's schooling and that she did not take advantage of the "parent portal" to access Luke's grades. And Sally testified that she knew she was listed as an emergency contact for Luke with his school district. Sally further testified that she had attempted to contact Luke's teachers, but they "denied" her the right to talk to them about Luke. Luke's teachers disputed Sally's account, testifying that Sally had never contacted them and

19

that if she had, they would have given her any requested information.[10] Tina also testified that she had not attempted to prevent Sally from talking to Luke's teachers or from obtaining his school and medical records. Tina ensured that Luke's school had a copy of the SAPCR order and that Sally was listed as a parent on Luke's forms, entitling Sally to "equal access" to Luke's school information. Tina also testified that she had notified Sally of multiple school events, issues, and grades. Although Sally testified that she has a degree in special education and early childhood education and that she knew she was entitled to talk to Luke's teachers, she was unaware that she could contact Luke's teachers by text or email.

As we previously recognized, Sally argues that Peter and Tina's general course of conduct effectively poisoned Luke's mind against Sally, resulting in the alienation of her relationship with Luke and justifying a change-in-circumstances finding. Tina did testify that she did not believe Sally could address Luke's issues, including ADHD and a reading delay, based on Sally's prior refusal to give him his prescribed ADHD medication; on Luke's reading skills regressing in the summers after being with Sally; and on Sally's failure to find Luke a speech therapist in 2016 after saying she would do so. But Elliott testified that Sally had caused Luke "a great deal of stress and anxiety" when Sally told him that "his father had killed his baby brother" and then told him that "his dad came from [Tina's] tummy." Sally also repeatedly told Luke that he

_____

[10]One of these teachers testified that she taught Luke during his first- and second-grade years and that Sally had never contacted her during those two years.

would be living with her and her parents, causing Luke "a great deal of distress." There was no evidence that Peter and Tina discussed their reservations about Sally's parenting abilities with Luke. Luke only remembers living with Peter and Tina. Tina testified that it would be "tragic" if Luke moved to Texarkana "when he's doing so well, and happy and well adjusted as he is."

We conclude this evidence was legally and factually sufficient to support the trial court's explicit finding that there had been no material and substantial change in the parties' circumstances in the year after the SAPCR order justifying a modification regarding the primary-residence issue; therefore, this factor shows that the trial court did not abuse its discretion. Competing evidence regarding changed circumstances does not equate to legally or factually insufficient evidence to support the denial of a requested modification. *See, e.g.*, *E.M.*, 2019 WL 2635565, at *6-7; *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (substituted op.). The occurrences Sally relies on to prove a change in circumstances were disputed, allowing the trial court to weigh the evidence and make credibility determinations, which prevents us from concluding the trial court abused its discretion. *See J.R.D.*, 169 S.W.3d at 743. Based on the state of the evidence on this issue, we conclude the trial court did not abuse its discretion by finding no material and substantial change in circumstances.

The same conclusion holds true for the trial court's implicit best-interest finding, which we address in the alternative to our changed-circumstances holding.

21

*See Holloway v. Allison*, 494 S.W.2d 612, 614 (Tex. App.—Tyler 1973, no writ). As we mentioned, the evidence shows that Luke has made great strides since Peter and Tina were granted primary custody of him. His speech impairment has abated and he no longer qualifies for special-education services based on his prior emotional disturbance. He has no memory of living with anyone other than Peter and Tina, and Luke's teachers consistently testified that Peter and Tina were involved, patient, and present caregivers. In contrast, Sally was not willing to consistently give Luke his ADHD medication (even though Elliott testified it was medically necessary), Luke's teachers noted his regression and behavioral problems when he was off his medication, and Tina testified Luke's improvements would be erased if he were taken off the medication. Luke told Elliott that when he is with Sally and her parents, he is allowed to play video games all day, which Elliott explained disproportionately and negatively affects Luke because he was born with brain dysplasia.

Elliott testified that Sally's discussion with Luke that she was trying to make sure Luke lived with her and that his father had killed his younger brother was not in Luke's best interest because it had a negative impact on him "in terms of his overall emotional well-being" and made him "incredibly scared." Elliott saw no indication that Luke had been coached. Elliott concluded that a change in Luke's environment would cause him to regress after having made large developmental improvements under Peter and Tina's care:

22

I am gravely concerned about regression in his progress that he has made. He has made tremendous amounts of changes developmentally, academically, socially, and emotionally and mentally, and I personally have seen the [school's] documentation that supports his regression just in reading skills. And I've also seen an increase in anxiety with inappropriate things being told to him, so I'm gravely concerned that we would see a huge regression and he would not achieve his maximum potential.

. . . .

. . . [Peter and Tina] have done everything [recommended for Luke's development]. Above and beyond.

The evidence sufficiently afforded the trial court the discretion to find that allowing Sally to designate Luke's primary residence would not be in Luke's best interest. *See, e.g.*, *E.M.*, 2019 WL 2635565, at \*7–8; *In re J.P.M.*, No. 02-11-00441-CV, 2012 WL 2428495, at \*2 (Tex. App.—Fort Worth June 28, 2012, no pet.) (mem. op.). We decline to second-guess this determination based on the best-interest evidence presented. *See E.M.*, 2019 WL 2635565, at \*8. We overrule issue three.

## C. AUTHORITY TO ORDER CHILD SUPPORT

In her final and fourth issue, Sally argues that the trial court abused its discretion by determining that Peter and Tina could not be ordered to pay child support even though they were joint managing conservators with Sally.[11] We review the denial for an abuse of discretion. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

---

[11]Sally does not clearly attack the modification to the amount of her child-support obligation as she did in her motion for new trial.

23

At the beginning of the modification hearing, Sally argued that the trial court was authorized to order Peter and Tina to pay child support because they were joint managing conservators. Sally stated that the issue had been addressed "earlier," and the trial court agreed: "And, again, I'll state on the record, we had covered this before, I understand you're making a record on it. . . . You know my position . . . but I will let you put on evidence in regard to that." Later, when Sally was questioning Peter about his salary (and over a relevance objection based on the absence of "a duty to support as a nonparent, nonadoptive parent conservator"), the trial judge reaffirmed that he was "still holding to [his] previous ruling" and allowed Sally to introduce evidence regarding Peter and Tina's ability to pay child support. After both sides rested and closed the evidence, the trial judge reiterated that his "position" on child support was that "at least under these circumstances," Peter and Tina could not be ordered to pay child support. The modification order did not expressly rule on the child-support request, instead denying "all relief requested in this case . . . not expressly granted."

Sally contends that even though the record does not reveal what the "previous ruling" was, we may presume that the trial court denied Sally's request because it concluded that it did not have the authority to do so based on Peter and Tina's status as nonparents. But the record does not support this reading of the trial court's statements. At no point did the trial court state that it was never authorized to order nonparent conservators to pay child support. The most the trial court stated was that

the "circumstances" did not support such an order. In the absence of findings and conclusions, we decline to read more into the trial court's implicit ruling in the modification order other than the fact that Sally's request was denied. *Cf. In re Doe 10*, 78 S.W.3d 338, 340 n.2 (Tex. 2002) ("Oral comments from the bench are not written findings of fact."). Indeed, we may imply only those findings necessary to support the trial court's denial. *See Worford*, 801 S.W.2d at 109. Additionally, Sally's child-support request was based on and conditional to her request that she be allowed to designate Luke's primary residence. Because the denial of Sally's residential-designation request was not an abuse of discretion, her child-support request became moot. *Cf. Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) ("[A] judgment must be supported by the pleadings . . . . Thus, a party may not be granted relief in the absence of pleadings to support that relief."); *Zafft v. GC Servs., L.P.*, No. 14-09-00563-CV, 2010 WL 3866490, at *4 n.4 (Tex. App.—Houston [14th Dist.] Oct. 5, 2010, pet. denied) (mem. op.) (recognizing conditional claim for attorney's fees became moot once no recovery found on breach-of-contract claim). We cannot find an abuse of discretion under these circumstances and overrule issue four.

## IV. CONCLUSION

Contrary to Sally's argument, there was not an unacceptable analytical gap between Elliott's expert opinion about Luke's best interest and the data she relied on; thus, the trial court did not abuse its discretion by admitting her expert report and her testimony based on the report. The trial court also did not abuse its discretion by

25

modifying the custodial-exchange location based on competing evidence of a change in circumstances since the SAPCR order and of Luke's best interest. Similarly and presuming all findings in support of the trial court's ruling, the evidence regarding whether Sally should have the right to designate Luke's primary residence amply supported the trial court's discretionary decision to deny Sally's request. Finally, because Sally's request for child-support payments from Peter and Tina was conditional to her request to designate Luke's primary residence, the trial court's implicit denial was not an abuse of discretion. Thus, after considering all the evidence and finding no abuse of discretion, we affirm the trial court's modification order, which was signed June 24, 2019.

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: April 9, 2020